433 So.2d 916 (1983)
PENROD DRILLING CO.
v.
Aubrey Wayne BOUNDS.
No. 53547.
Supreme Court of Mississippi.
May 11, 1983.
Rushing & Guice, Robert Alan Byrd, Biloxi, Daniel A. Webb, New Orleans, La., for appellant.
Denton, Persons, Dornan & Bilbo, Donald C. Dornan, Jr., William L. Denton, Biloxi, for appellee.
En Banc.
HAWKINS, Justice, for the Court:

FACTS
Aubrey Wayne Bounds is a resident of Forrest County. Penrod Drilling Company *917 is a foreign corporation not qualified to do business in Mississippi, with principal offices in Dallas, Texas. On March 17, 1976, while he was employed by Penrod and working on a floating workover vessel off the coast of Louisiana, Bounds suffered serious personal injuries.
As a result of his injuries Bounds had a cause of action against Penrod under 46 U.S.C.A. § 688 (1976), the "Jones Act".
On December 22, 1978, Bounds filed a bill of complaint in the Chancery Court of Forrest County against Penrod under the "Jones Act", seeking money damages of $1,200,000. He based jurisdiction in the Forrest County Chancery Court by naming as "garnishee defendants" eight nationwide oil corporations, all of whom do business in this state and have registered agents for service of process.[1] He alleged that each of these "garnishee defendants" was either indebted to Penrod or had property and effects of Penrod in its possession, and which were subject to attachment and garnishment. In addition to his claim for monetary damages against Penrod, Bounds also prayed that a "judgment lien" be impressed on all property attached of the garnishee defendants in order that the same might be sold for satisfaction of the money judgment against Penrod.
Pennzoil Company and Mobil Oil Corporation filed answers on January 16, 1979, denying both any indebtedness to Penrod and possession of any property belonging to Penrod.
On January 16, 1979, counsel for both Penrod and Bounds appeared before the chancery court and made oral motion to dismiss the action against all garnishee defendants. Pursuant to this motion counsel for both these parties signed and submitted to the court an agreed decree which was signed and entered that day by the court. This decree reads:
AGREED DECREE
Pursuant to the joint motion of Penrod Drilling Company, The Defendant in the above styled and numbered cause, and Aubrey Wayne Bounds, the Plaintiff, ore tenus, the said Penrod Drilling Company, having entered its appearance herein, to dismiss all Garnishee-Defendants as to Penrod Drilling Company, and there being no objection thereto by the Plaintiff, it appears unto the Court that said motion should be sustained as hereinafter set forth, and it is, therefore,
ORDERED, ADJUDGED AND DECREED that the aforesaid motion be, and is hereby, sustained and that the appearance of Penrod Drilling Company is hereby noted, with leave granted to said Defendant to file responsive pleadings to the Bill of Complaint and Attachment in Chancery filed by the Plaintiff, until on or before February 12, 1979, the next regular return date of said Court. It is further,
ORDERED, ADJUDGED AND DECREED that all of the said Garnishee (Attachment) Defendants, as to Penrod Drilling Company, herein including the following: Texaco, Inc., Gulf Oil Corporation, Exxon Corporation, Amoco Oil Company, Mobil Oil Corporation, Pennzoil Company, Ashland Oil, Inc. and Union Oil Company of California be, and said Garnishee (attachment) Defendants as herein named be, and hereby are, each and all discharged and dismissed as Garnishee (attachment) Defendants, as to Penrod Drilling Company, without necessity of any pleadings or appearances on their part, or on the part of any of them as to said Penrod Drilling Company; and that the Writs of Garnishment, (attachment) heretofore issued herein or requested to be issued herein as to each and all of the said Garnishee (attachment) Defendants are hereby dismissed as to the Defendant Penrod Drilling Company.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant, Penrod Drilling Company, having covenanted and agreed accordingly, *918 will not remove or attempt to remove this action from this Court to any other Court, including the United States District Court in any district, but this shall not preclude Penrod challenging the jurisdiction of this Court as to subject matter of this action. (emphasis added)
Despite this agreed decree Amoco Oil Company filed an answer January 26, Texaco filed an answer February 13, and Ashland filed an answer February 16, 1979, all denying any indebtedness to Penrod or possession of any property or effects of Penrod in their possession.
Penrod filed its answer February 13, 1979. It attacked chancery court jurisdiction solely on the basis that the Mississippi attachment statutes, Mississippi Code Annotated sections 11-31-1 to -11 (1972), had been declared unconstitutional. It made no specific allegation that the chancery court lacked attachment jurisdiction because none of the garnishee defendants was indebted to Penrod or had property belonging to Penrod in its possession when suit was filed. The answer contained a general denial of the allegations of the complaint against Penrod, and was under oath. No separate motion to dismiss, or to transfer the cause to a law court, was filed with the answer.[2]
Interrogatories were filed both by Bounds and Penrod, and in due course these were answered by each.
On April 21, 1980, Penrod filed a motion to dismiss, as follows:
MOTION TO DISMISS
Comes now the Defendant, Penrod Drilling Company, by and through its attorneys, Rushing and Guice, and moves the Court to dismiss the above styled and numbered cause without prejudice for lack of subject matter and jurisdiction.
WHEREFORE, Defendant prays that the above styled and numbered cause be dismissed without prejudice and all costs be taxed to the Plaintiff herein.
By order dated April 25, 1980, the court reserved ruling on this motion.
Trial was had before the chancery court on November 19-20, 1980.
At the conclusion of the trial, Penrod renewed its motion to dismiss, and submitted a brief. The brief relates that in the answer of Penrod to the bill of complaint the basis of its claim of lack of subject matter jurisdiction was that the attachment statutes were unconstitutional. The entire thrust of the brief is that Bounds' sole claim against Penrod was a suit in tort for personal injuries under the Jones Act, and since the attachment statutes were unconstitutional, the chancery court lacked "subject matter" jurisdiction. It alleged subject matter jurisdiction was in a circuit court. Penrod conceded that state courts, as well as federal courts, had subject matter jurisdiction to hear causes predicated under the Jones Act, but contended the case should be in a circuit court.
Penrod supported its argument on the unconstitutionality of the attachment statutes with two cases decided by United States district courts of this state: Mississippi Chemical Corp. v. Chemical Construction Corp., 444 F. Supp. 925 (S.D.Miss. 1977); and M.P.I. v. McCullough, 463 F. Supp. 887 (N.D.Miss. 1978).
The chancellor in a lengthy opinion reviewed the chronology of this case and the two United States District Court cases cited by Penrod, and then held the factors in those cases were absent in this case because no property or funds had ever been attached. Indeed, prior to the attachment issue ever being reached Penrod and Bounds submitted a consent decree to the chancery court.
The chancellor's opinion merits quotation:
* * * * * *
The Court finds that the factors upon which the District Court relied in Mississippi Chemical Corp., are not applicable to this case. While it is true that the attachment sub judice was invoked at the discretion of the Complainant's counsel and that no bond was posted, by the same *919 token, Penrod was not required to post any bond to dissolve the attachment, the same having been done by its voluntary agreement in the form of the Order which dismissed the garnishee-defendants. After this had been done, the Court finds that there was no necessity for review by a disinterested judicial officer or for a post procedure hearing, inasmuch as the attachments had by then been dissolved.
The most important factor which caused the Court in Mississippi Chemical to make its holding was the fact that substantial sums of money belonging to Chemico were bound in the hands of third parties, without notice. The Court held that this constituted a deprivation of property without due process. The Court considers this to be the most important factor which distinguishes the case at bar with Mississippi Chemical. In Mississippi Chemical, large sums of money belonging to the Defendant were bound. In the case now under consideration, no funds belonging to Penrod were ever bound in the hands of the garnishee-defendants. This fact is uncontradicted in the record and is evidenced by the sworn Answers by the garnishee-defendants. The Court finds that the underlying reasons which the Mississippi Chemical Court relied upon to invalidate the attachment procedure are not applicable here. For instance, there was no showing that the attachments were wrongfully or mistakenly used. In this regard, the Court finds that Penrod was a true nonresident of the State of Mississippi at the time of the filing of the Bill of Complaint. Further, there is no question about the binding of any sums which resulted from contracts entered into outside the State of Mississippi because no sums were ever bound.
The Court further finds that there was no evidence of coercion or intimidation offered which may have required the Defendant to make a personal appearance in this case. Nor can such coercion be presumed by the Court. There was no requirement that Penrod enter its appearance and if it did not intend litigate this matter before this Court, the Defendant could have simply done nothing and required the Complainant to contest the validity of each of the answers of the garnishee-defendants in order to determine if any of them possessed any property belonging to Penrod over which jurisdiction could be obtained.

The Court therefore concludes that there has been no deprivation of property belonging to Penrod without due process for the reason that no sums belonging to it were ever bound. Neither is there a question of the wrongful attachment of money to which the Complainant is not entitled, either because of the lack of necessity for attachment, lack of merit to his claim, or excessiveness of the amount sought to be attached. Absent the general appearance which Penrod made when it filed its answer, this Court would have been powerless to make any adjudication against it whatsoever. However, by entering its appearance, Penrod cannot now complain of procedural irregularities, which this Court finds do not exist in this case. The Court therefore finds that the Defendant was not deprived of procedural due process due to the attachment which was employed in this case and therefore the Motion to Dismiss is not well taken.
The Court further finds that once equity jurisdiction has attached, the cause may still be retained and heard on its merits and a comprehensive Decree entered, even though the equitable issues have been resolved by agreement prior to the time of hearing, leaving only legal issues to be resolved. McClendon v. Mississippi State Highway Commission, 205 Miss. 71, 38 So.2d 325 (1949); Euclid-Miss. v. Western Casualty and Surety Company, [249 Miss. 547], 163 So.2d 676 (Miss. 1964). The Court concludes that it properly entertained jurisdiction of this cause ab initio, as there was no prohibition from the federal courts or the Mississippi Supreme Court against the use of the attachment in chancery procedure at the time of the filing of the Bill of Complaint. *920 The Court therefore finds that all parties are properly before the Court and that it has jurisdiction of the parties and of the subject matter of this cause and now proceeds to adjudicate the remaining issues between the parties. (emphasis added)
Whether any of the eight garnishee defendants in fact was either indebted to or had property of Penrod in its possession at the time suit was filed was never determined. Five answered denying, three never answered, but there was no necessity of ever addressing the issue by discovery or court hearing because Penrod and Bounds presented a consent decree to the chancery court disposing of this question.

LAW
Did the chancellor err in holding that the Chancery Court of Forrest County had authority to hear and decide Bounds' cause of action against Penrod?
Penrod again argues that because the attachment procedures under chancery attachment statutes violate the due process clauses of the 5th and 14th amendments, the chancery court never had "subject matter jurisdiction," and therefore had no authority to hear Bounds' lawsuit against Penrod. In view of its entry of appearance, it argues that the only court which had the authority to hear this case was a circuit court.
Here, as in the chancery court, Penrod cites as authority for this contention two cases decided by United States district courts in this state: Mississippi Chemical Corp. v. Chemical Construction Corp., 444 F. Supp. 925 (S.D.Miss. 1977); and M.P.I. v. McCullough, 463 F. Supp. 887 (N.D.Miss. 1978).
Let us first examine the attachment statutes. The pertinent portions of Mississippi Code Annotated section 11-31-1 (1972) read:
§ 11-31-1. Jurisdiction; debtors.
The chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness, whether the same be legal or equitable, or for the recovery of damages ... arising ex delicto against any nonresident, ... and persons in this state who have in their hands effects of, or are indebted to, such nonresident, ... The court shall give a decree in personam against such nonresident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance.
Mississippi Code Annotated section 11-31-3 (1972) deals with the procedure for attaching effects of, or an indebtedness due a nonresident:
§ 11-31-3. How effects or indebtedness bound.
When a bill shall be filed for an attachment of the effects of a nonresident, absent or absconding debtor in the hands of persons in this state, or of the indebtedness of the defendant in this state to such nonresident, absent or absconding debtor, it shall be sufficient to bind such effects or indebtedness, that the summons for the defendant resident in this state shall have stated in or endorsed upon it the nature and object of the suit, and that it is to subject the effects in the hands of the resident defendant, and the indebtedness of such defendant to the nonresident, absent or absconding debtor, to the demand of the complainant; or, instead of such statement on the summons, a copy of the bill may be served with the summons, and shall bind the effects or indebtedness from the time of such service. (emphasis added).
Mississippi Code Annotated section 11-31-5 (1972) provides for the levy of land belonging to the nonresident:
§ 11-31-5. How land levied upon.
If the land of the nonresident, absent or absconding debtor be the subject of such suit, a writ of attachment shall be issued, and shall be levied by the sheriff or other officer as such writs at law are required to be levied on land, and shall have like effect.
Mississippi Chemical Corp. (Mississippi Chemical) v. Chemical Construction Corp. (Chemico), supra, does not support the contention *921 of Penrod, but rather the contrary. In that case Mississippi Chemical sued Chemico in the United States District Court for the Southern District of Mississippi in a diversity action, and utilizing the Mississippi attachment statutes, named as attachment defendants ten foreign corporations indebted to Chemico. Mississippi Chemical thereby attached over a million dollars in indebtednesses due Chemico by these various corporations.
Chemico moved for an order to vacate the attachments because the statutory procedure for attaching these indebtednesses was unconstitutional. The court agreed, and vacated the attachments, but retained the cause of action of Mississippi Chemical against Chemico.
The district judge held that the failure of section 11-31-3, supra, to provide for notice and an opportunity to be heard before property or debts were bound rendered the procedure for attaching property thereunder unconstitutional.
The opinion first points out that the attachment procedure might be solely against a debt, or might also be against the nonresident personally:
This indebtedness, which is frozen once service is made upon the attachment defendants, is the res which provides the chancery court with quasi in rem jurisdiction over the non-resident principal defendant, to the extent of the indebtedness. The principal defendant may be made a party to the lawsuit merely by publication of a summons. Section 11-31-9, Mississippi Code of 1972.
Additionally, the chancery court may acquire in personam jurisdiction over the non-resident principal defendant if personal service is made upon him, or if he enters an appearance. Section 11-31-1, Mississippi Code of 1972. Unless the non-resident principal defendant is thus subjected to the chancery court's in personam jurisdiction, judgment may be rendered against him only to the extent of the attached indebtedness.
Id. at 931 (footnote omitted).
The opinion then states the basis of Chemico's motion:
Initially, the Defendant contends that the Attachments in Chancery procedures under attack herein deprive Chemico of property under color of state law and must therefore be accompanied by procedural due process. This Court concurs.
Id. at 933 (emphasis added).
This scholarly opinion then details the reasons why under the United States Constitution notice and an opportunity to be heard must be provided for before property is seized under an attachment statute.
Did the district court nevertheless have authority, or "jurisdiction" to proceed with the lawsuit? Indeed it did, and this was never contested by Chemico. It had been served with process under the long arm statute. The court stated:
In the case before the Court Chemico is a foreign corporation which not only may be, but was in fact served under Mississippi's long arm statute.
Id. at 937.
* * * * * *
In the case sub judice, Chemico does not question this Court's jurisdiction because it has been served through its resident agent in Mississippi.
Id. at 943.
In Mississippi Chemical we thus have a court vacating the attachment of property, but retaining jurisdiction to hear the primary cause of action.
In M.P.I. v. McCullough, supra, a Texas resident named Dupre sued a Texas corporation, M.P.I., in the Chancery Court of Chickasaw County for a sum of money and specific performance under a contract made between the parties in Texas and which was entirely performed outside the state of Mississippi. The basis for the chancery court action in Chickasaw County, Mississippi, was a manufacturing plant owned and operated by M.P.I. in Chickasaw County, and which was levied upon under Mississippi Code Annotated § 11-31-5, supra.
M.P.I. then filed suit against the chancery clerk, sheriff, and Dupre in the United *922 States district court not only to restrain the attachment, but also to enjoin Dupre from proceeding in the state court action.
Again, in a scholarly opinion, the court held that the attachment procedure authorizing the levy upon and attachment of land without requiring notice and an opportunity to be heard violated due process.
The district court did not, however, enjoin Dupre from proceeding in the chancery court. The court stated: "We hold that the attachment procedure is unconstitutional, and that we, as a federal district court, have the power and authority, and should exercise it, to restrain the enforcement of the constitutionally impermissible procedure, but without otherwise interfering with the prosecution of the state court action. Id. at 888.[3]
In the instant case, Bounds based his cause of action against Penrod in the Chancery Court of Forrest County upon two grounds: (1) his claim for personal injuries under the Jones Act; (2) debts due Penrod by foreign corporations authorized to do business in Mississippi.
As the chancellor so lucidly observed in his opinion, Penrod could have challenged the attachment procedure, but did not. Furthermore, there was no requirement for Penrod to enter its appearance, but it chose to do so.[4]
By agreement of the parties, solemnized by court decree, all attachment proceedings were dispensed with, and Penrod voluntarily entered its personal appearance and covenanted not to attempt to remove the case.
Any attachment impediment being thus removed, the only question remaining before the chancellor was his authority to proceed with the primary case: Bounds' claim under the Jones Act.
The agreed decree, prior to any property or debt having ever been attached or bound, put the parties in the same position they would have been if the suit had been filed in chancery court in the absence of any attachment.
Such a suit undoubtedly would have been subject to transfer or dismissal, but when the defendant voluntarily entered its appearance and covenanted  insofar as it was concerned  not to attempt to remove the case, the sole question remaining is whether or not the chancellor had jurisdiction to proceed.
"Jurisdiction" is a broad term, and has been defined in countless ways by courts. Generally speaking, it means the power or authority of a court to hear and decide a case. Black's Law Dictionary 991 (rev. 4th ed. 1968); 50 C.J.S. Jurisdiction (1947); 21 C.J.S. Courts, §§ 15, 23, 35 (1940); Grenada Bank v. Petty, 174 Miss. 415, 164 So. 316 (1935); Leake County Cooperative v. Dependents of Barrett, 226 So.2d 608 (Miss. 1969), on petition for rehearing.
We cannot escape the conclusion that under our Constitution the chancery court was authorized to proceed with the trial of this case.
Article 6, Section 147 of our Mississippi Constitution provides:
No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction; but if the Supreme Court shall find error in the proceedings *923 other than as to jurisdiction, and it shall be necessary to remand the case, the Supreme Court may remand it to that court which, in its opinion, can best determine the controversy.
Penrod concedes, as indeed it must, that its voluntary appearance and answer operated to give a court of this state power to hear this case. Its only remaining argument can be that the case was in the wrong court.
In our decisions under this section of the Constitution, not only have we held that the error in filing a common law suit in chancery did not render the suit subject to dismissal, but moreover, it was not even subject to reversal on this ground. See, e.g., McLean v. Green, 352 So.2d 1312 (Miss. 1977); Mathews v. Thompson, 231 Miss. 258, 95 So.2d 438 (1957); Boyett v. Boyett, 152 Miss. 201, 119 So. 299 (1928), on suggestion of error (suggestion of error overruled); Talbot & Higgins Lumber Co. v. McLeod Lumber Co., 147 Miss. 186, 113 So. 433 (1927); Hancock v. Dodge, 85 Miss. 228, 37 So. 711 (1905); and Cazeneuve v. Curell, 70 Miss. 521, 13 So. 32 (1893).
Language in the last-cited case is particularly appropriate to the instant case:
We find here practical authority for the virtual obliteration of the lines of demarcation between courts of law and equity, if the judges and chancellors of the inferior courts choose to disregard, or fail to observe, those distinguishing lines. And this court is forbidden to reverse or annul decrees or judgments rendered in the lower courts, even if there was want of jurisdiction, if no other error than want of jurisdiction is to be found.
* * * * * *
The language is plain, unambiguous, all-comprehensive. The purpose of this 147th section of the constitution is to prevent reversals because of want of jurisdiction in the court below.
Id. at 524-25, 13 So. at 33.
We have no doubt but that presently there are many cases pending in chancery courts of this state in which the circuit court would be the more appropriate forum, but if there is no objection by the parties, the chancellor of his own motion is not required to transfer the cause, but may hear and determine the issues and render a valid decree.
Penrod's assertion that because attachment procedures have been declared unconstitutional, the chancery court had no power to hear and determine this case, after it had voluntarily entered its appearance and covenanted to make no attempt to remove the primary cause of action, is completely unpersuasive.
We have held that when a court lacks "subject matter jurisdiction", it has no authority whatever to hear a case. Duvall v. Duvall, 224 Miss. 546, 80 So.2d 752 (1955).
If we followed the argument of Penrod, it would mean that the final decrees in thousands of cases which have been tried in a chancery court of this state in which a circuit court would have been the more appropriate forum, yet the parties offered no objection and filed no motions to transfer or dismiss, are void.
We therefore hold that any court decision or holding that the former attachment procedures under our chancery attachment statutes were unconstitutional is irrelevant under the facts of this case.
AFFIRMED.
BOWLING and DAN M. LEE, JJ., concur.
PRATHER and ROBERTSON, JJ., specially concur.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, J., dissent.
ROBERTSON, Justice, specially concurring:

I.
Aubrey Wayne Bounds has brought an action which is not within the subject matter jurisdiction of the Chancery Court of Forrest County, Mississippi. This is so because he has failed to establish a jurisdictional *924 fact, i.e., the existence of an indebtedness owing by one or more of eight garnishee-defendants to the in personam defendant, Penrod Drilling Company. For this reason, I suggest with deference that my colleague, Justice Hawkins, errs when he concludes that "the Chancery Court was authorized to proceed with the trial of this case". (See majority opinion at page 12).
Bounds asserts his substantive claim for relief under the Jones Act, U.S.C. § 688. In so doing, he has brought an action at law. The substance of Bounds' claim is no doubt within Circuit Court subject matter jurisdiction in this state. If back on December 15, 1978, Bounds had filed his complaint[1] in the Circuit Court of Forrest County, Mississippi, he would have faced no jurisdictional dilemma.
Construing liberally as we ought the provisions of Section 147 of the Mississippi Constitution of 1890, the judgment of the Chancery Court is beyond our power to reverse. The only error in the proceedings below was the assumption of subject matter jurisdiction by the Chancery Court of an action clearly within the subject matter jurisdiction of the Circuit Court. I would affirm.

II.
This case is appropriate for an exposition of the general theory of subject matter jurisdiction. I would begin by emphasizing that every court has jurisdiction to determine its own jurisdiction. Though in this case the Chancery Court did not have subject matter jurisdiction of this controversy, that court clearly had jurisdiction, i.e., the judicial power, to make a binding adjudication upon the issue of its own subject matter jurisdiction. More specifically, the Chancery Court of Forrest County had jurisdiction to determine authoritatively (subject only to review in this Court) the jurisdictional fact question here presented, i.e., was there an indebtedness owing to Penrod by one or more of the eight garnishee-defendants?
Having said that, I would emphasize that, generally speaking, the existence of subject matter jurisdiction  the power to hear this type of case at all  turns on the well pleaded allegations of the complaint which are taken as true. The defendant's denial of the facts alleged in the complaint is, again generally speaking, irrelevant to the existence of subject matter jurisdiction. This is as it should be.
First, this rule is consistent with the general policy of "first things first". It goes without saying that in every lawsuit subject matter jurisdiction needs to be determined, and determinable, at the outset. It should not be dependent upon future contingencies. Strict adherence to this notion saves time, money and energy that might otherwise be wasted in litigating a case ultimately dismissed on jurisdictional grounds.
Second, short of fraud or collusion on his part, the plaintiff is entitled to a measure of security when he files his suit. The well pleaded complaint rule immunizes the plaintiff from exposure to unreasonable hazards.[2] The defendant, too, may litigate vigorously, secure in the knowledge that his victory, if he obtains one, will not evaporate *925 on jurisdictional grounds. Here we in no way compromise the general principle that subject matter jurisdiction may be questioned at any time and may not be waived or conferred by consent. Having that jurisdiction determinable, generally irrevocably, on the day suit is filed on the basis of the good faith, well pleaded allegations of the complaint does no violence to that premise.
Third, the well pleaded complaint rule insures that conceptually the Court has the power to require a response by the defendant. Or, conversely, it assures that, if the defendant defaults, the Court has the power to enter a binding and enforceable judgment against him. Obviously, this is a power that the trial court, the court of original jurisdiction, must have in every case.
There is one major exception to this general premise. Where by statute subject matter jurisdiction is made to turn on the existence of certain facts, the plaintiff's failure to establish those facts is sufficient to deprive the court of jurisdiction. True, the court has jurisdiction by virtue of the allegations of the complaint to determine the jurisdictional fact. Yet, the possibility that the fact may not be found to exist does constitute a future contingency that may shortcircuit subject matter jurisdiction.
Chancery attachment pursuant to Sections 11-3-1 of the Mississippi Code of 1972, is one representative example of this jurisdictional facts exception to the general rule. Another is found in the familiar jurisdictional amount statutes. When it appears to a legal certainty that the plaintiff has no claim for an amount in excess of the statutory jurisdictional minimum, it may be said that he has failed to establish the existence of a jurisdictional fact, i.e., a controversy within the court's jurisdiction. See, e.g., Mobile, Jackson and Kansas City Railroad Co. v. Hitt, 99 Miss. 679, 55 So. 484 (1911) (suit for $179.20 dismissed for want of circuit court subject matter jurisdiction where by statute the circuit court operated under a $200.00 minimum jurisdictional amount requirement).
In the district courts of the United States, diversity of citizenship jurisdiction offers another example of this jurisdictional facts exception to the well pleaded complaint rule. Despite the allegations of the complaint, if the plaintiff fails to establish as a matter of fact that the parties are of diverse citizenship, the complaint must be dismissed for lack of subject matter jurisdiction. Owen Equipment and Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (Iowa plaintiff sued defendant thought to have its principal place of business in Nebraska. Three days into the trial it was discovered that the defendant's place of business, though on the "Nebraska side" of the Missouri River, was actually in Iowa. The Court dismissed for lack of subject matter jurisdiction); Kelly v. United States Steel Corp., 284 F.2d 850 (3rd Cir.1960). (Plaintiff, a citizen of Pennsylvania, alleged that U.S. Steel's principal place of business was New York. The Court found as a fact that it was in Pennsylvania and dismissed.)
Plaintiff Bounds has failed to establish a requisite jurisdictional fact, i.e., the existence of an indebtedness owing by one or more of the garnishee-defendants to Penrod. Because of this plaintiff has failed to bring his action within the subject matter jurisdiction of the Chancery Court. Minter v. Hart, 208 So.2d 169, 170 (Miss. 1968). Here a vitally important distinction must not be ignored: For subject matter jurisdiction purposes, all that plaintiff needed to establish was the existence of an indebtedness owing by any one or more of the garnishee-defendants to Penrod. Whether or not that indebtedness, that res, was actually seized and subjected to the power of the court is irrelevant to the issue of subject matter jurisdiction. The seizure of the res, or lack of seizure, goes to the question of judicial jurisdiction,[3] not subject matter jurisdiction. The question of whether or not the res has been attached and subjected to the power of the Court has nothing to do with subject matter jurisdiction. That *926 question relates only to the existence of judicial jurisdiction.[4]
As I read it, the majority opinion blurs the distinction between subject matter and judicial jurisdiction. This has been done in our prior cases all too frequently. For example, see Crescent Plywood Co. v. Lawrence, 305 So.2d 343, 346-347 (Miss. 1974), which in turn quotes from Griffith, Mississippi Chancery Practice, § 484, at 489-90 (2d ed. 1950). The vital distinction between subject matter jurisdiction and judicial jurisdiction is there non-existent.[5]
The point is important because judicial jurisdiction may be waived, while subject matter jurisdiction may not. If the res, i.e., the debt existed, Penrod would have been free to waive any objection it may have had to the fact that it had not been seized or attached. More precisely, if plaintiff had established as a fact that one or more of the garnishee-defendants really did owe money to Penrod at the time the suit was filed, the case would have been within the subject matter jurisdiction of the chancery court under Section 11-31-1. Whether that debt had in fact been seized would have been *927 irrelevant to the question of subject matter jurisdiction and, with Penrod having entered its appearance and waived any claim of lack of in personam jurisdiction, this Court would be required to affirm  without ever reaching the Section 147 question discussed below.

III.
Another possible route to affirmance is suggested by the Chancery Court's opinion on the jurisdictional issue. We will pursue it briefly.
Here we speak of the familiar principle that, so long as the complaint alleges one matter within the subject matter jurisdiction of the Chancery Court, it has full power to hear and decide any and all non-chancery matters also alleged. Griffith, Mississippi Chancery Practice (2d ed. 1950) § 28. For example, if a complaint alleges one equity claim coupled with one or more legal claims, the Chancery Court has full power to decide all claims. In this circumstance it may be said that the legal claims lie within the pendent jurisdiction of the Chancery Court.
The proposition is carried a step further in such cases where, prior to trial, all chancery claims are dismissed  leaving a lawsuit consisting of claims ordinarily exclusively within the subject matter jurisdiction of the circuit court. In such cases, it is well established that the chancery court nevertheless has the power to hear and decide the remaining legal claims, notwithstanding the earlier evaporation of the equity claims. See e.g., Burnett v. Bass, 152 Miss. 517, 521, 120 So. 456 (1929); McClendon v. Mississippi State Highway Commission, 205 Miss. 71, 80, 38 So.2d 325 (1949); Duvall v. Duvall, 224 Miss. 546, 555, 80 So.2d 752 (1955); Shaw v. Owen Gin Co., 229 Miss. 126, 133, 90 So.2d 179 (1956); Morgan v. United States Fidelity & Guaranty Co., 222 So.2d 820, 826 (Miss. 1969).
It is said that the power is not discretionary, that the chancery court must decide the remaining legal issues, though surely this is wrong. The chancery court originally has the power to hear the legal claims pursuant to the doctrine of pendent jurisdiction. To be sure it retains that power once the equity claims drop out of the case. But there must then be a second step wherein the chancellor is required in his sound discretion to determine whether or not he ought to exercise that power to hear and decide the legal issues. For example, where the equity claims drop out of the case early on in the proceedings and where the legal issues are such that the defendant is entitled to trial by jury (which he is demanding), and where the chancellor determines that it would work no undue hardship upon the litigants were they forced to repair to the circuit court, the chancellor would be well within his discretion to dismiss without prejudice the pending legal claims, or, on proper motion, to transfer them to the circuit court.[6] The only other exception to this pendent jurisdiction of the chancery court would be in cases where the chancery or equity claims were asserted originally under circumstances suggesting bad faith or fraud.
In the context of the premises stated above, it is tempting to say that Aubrey Wayne Bounds properly invoked the jurisdiction of the chancery court, that, once the chancery attachment claims dropped out of the lawsuit, the court nevertheless had the power in its sound discretion to continue with the legal claims and that the chancellor having done so and having rendered judgment for plaintiff, we should affirm. Such would be an application of the well pleaded complaint rule wherein we would blindly have to accept as true, for subject matter jurisdictional purposes, the allegations of the existence of an indebtedness *928 owing by one or more of the garnishee-defendants to Penrod. The jurisdictional facts exception stated above is to be sure an abberation disrupting the logical symmetry of the well pleaded complaint rule. It is, nevertheless, an abberation up with which we must be prepared to put.[7] For otherwise jurisdictional fact requirements in subject matter jurisdiction statutes would be rendered meaningless, thereby defeating clearly manifested legislative intent, and fraudulent invocation of subject matter jurisdiction would be impossible to police.
We thus return to the point made in Part II of this opinion. We regard as controlling that plaintiff failed to establish an essential jurisdictional fact. Plaintiff did not establish that any of the garnishee-defendants owed Penrod so much as one penny. This failure means that the Chancery Court of Forrest County, in the exercise of its jurisdiction to determine its own subject matter jurisdiction, should have held that it lacked subject matter jurisdiction and sent plaintiff packing.[8]
Accordingly, I would hold that the Chancery Court of Forrest County, Mississippi, lacked subject matter jurisdiction of this action.

IV.
An action under the Jones Act, 46 U.S.C. § 688, is essentially an action at law.[9] The Jones Act is a statutory remedy for seamen injured by the negligence of their employers.[10] Trial by jury is provided by statute and has always been considered a major part of the seaman's remedy.[11]Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); see also Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959), and Illinois Central Railroad Company v. Coussens, 223 Miss. 103, 117, 77 So.2d 818, 823 (1955).
Jones Act suits, like so many other federal statutory actions, are subject to a regime *929 of concurrent jurisdiction. They may be brought in the state or federal court of otherwise competent jurisdiction, at the plaintiff's election. 46 U.S.C. § 688; 45 U.S.C. § 56. That such actions at law may be heard and adjudicated on their merits in the circuit courts of this state has been established beyond per adventure. Larry v. Moody, 242 Miss. 267, 274, 134 So.2d 462, 464 (1961); Security Barge Line, Inc. v. Killebrew, 278 So.2d 460 (Miss. 1973); Standard Products, Inc. v. Patterson, 317 So.2d 376, 378 (Miss. 1975).
I am in sympathy with much of what Justice Broom has written in his dissenting opinion. Still I suspect with deference that he errs when he labels this action as "an in rem statutory procedure of attachment", now and forever. This is, and always has been, a single civil action. Its subject matter is a claim by plaintiff Bounds that he was the member of the crew of a vessel, that he was injured by the negligence of his employer, that the Jones Act afforded him the right of recovery for that negligence, that he was entitled to an award of monetary damages in personam against his employer, and that, in addition, he was entitled to the attachment remedy provided in Section 11-31-1, et seq. The only theory of liability he states is one "at law". The primary relief he seeks is damages, traditional legal relief. Only his auxiliary prayer for relief, chancery attachment, would not be entertained by the Circuit Court.
In my view, there is no question but that the complaint as filed stated a claim which, as of December 15, 1978, lay within the subject matter jurisdiction of the Circuit Court of Forrest County, Mississippi. No doubt, in personam jurisdiction was defective (though waivable). Even if the res had existed, plaintiff could not have subjected it to the jurisdiction of the Circuit Court for there is no statutory procedure in this state which covers such cases. But the fact that judicial jurisdiction may have been one hundred percent lacking in the Circuit Court in no way changes the fact that this action, applying the well pleaded complaint rule discussed above, lay within the subject matter jurisdiction of the Circuit Court.
If Bounds had filed with the Circuit Court the identical pieces of paper in fact filed with the Chancery Court on December 15, 1978, the action would have been within the subject matter jurisdiction of the Circuit Court. And if Penrod had consented to in personam jurisdiction and enter its appearance, the case could have proceeded to trial and judgment without doubt. Had such occurred, the allegations of the indebtedness owing to Penrod and the prayer for attachment of the res would properly have been viewed as so much useless verbiage in plaintiff's pleadings, because harmless, to be disregarded.[12]
It has been suggested that in the instant case, the pleadings and proof would not have made a prima facie case in either chancery or circuit court. This is simply not so. The pleadings and proof do make out a prima facie case in circuit court. We suggest that a careful analysis of the pleadings and proof establish, inter alia, that at the time and on the occasion in question Bounds was a member of the crew of a vessel owned or operated by Penrod [Producers Drilling Co. v. Gray, 361 F.2d 432 (5th Cir.1966)], that at the time and on the occasion in question Penrod or one of its agents was guilty of negligence which caused in whole or in part injuries sustained by Bounds. Under these circumstances, Bounds has alleged and proved all elements of the claim for relief under the Jones Act. Without regard to what else may have been *930 alleged but not proved, these allegations were sufficient to bring this action within the subject matter jurisdiction of the Circuit Court.

V.
There is yet another analysis upon which we conclude that this action was within circuit court subject matter jurisdiction. As explained above, this action is not within the limited subject matter jurisdiction of the chancery court. If that be so, it must per force be within the subject matter jurisdiction of the circuit court, a court of general jurisdiction.
Note Section 156 of the Mississippi Constitution of 1890 which provides
The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court.
The general jurisdictional powers created in the Constitution have been expressly vested in the circuit courts by legislative enactment. Section 9-7-81 of the Mississippi Code of 1972 provides that the circuit courts
Shall have original jurisdiction ... of all other actions and causes, matters and things arising under the Constitution and laws of this state[13] which are not exclusively cognizable in some other court. .. .
It is indisputable that original subject matter jurisdiction of this action must lie somewhere.[14] That somewhere is not the chancery court. It must, therefore, come within the catch-all original subject matter jurisdiction of the circuit court which, we emphasize, is a court of general jurisdiction. In this view, I would have the Court expressly hold that, pursuant to Section 156 of the Mississippi Constitution of 1890 and Section 9-7-81 of the Mississippi Code of 1972, original subject matter jurisdiction of this action properly lay in the Circuit Court of Forrest County, Mississippi.

VI.
We now come to the question of what disposition should be made of this matter in view of what we have said above. We consider this question in the light of Section 147 of the Mississippi Constitution of 1890, which precludes reversal where there has been a mistake of subject matter jurisdiction between matters of law and equity.
We must remember that it is a constitution we are expounding.[15] A constitution is a document presumably capable of ordering the affairs of men in decades beyond the time of ratification. Constitutional provisions must be capable of providing a framework for the administration of justice under circumstances beyond the prescience of their draftsmen.
This maxim of constitutional construction has been long recognized by this Court. See Moore v. General Motors Acceptance Corp., 155 Miss. 818, 125 So. 411 (1930). There Judge Griffith charged those construing the provisions of the Mississippi Constitution of 1890
To ascertain and give effect to the intent of those who adopted it, to constantly keep in mind the object desired to be accomplished and the evils sought to be prevented or remedied. 155 Miss. at 822, 125 So. 411.
In the Moore case, Judge Griffith then provides us with a classic statement of the *931 underlying principles of constitutional interpretation
So it is that words, separately considered and in the strictly technical sense in which used in a Constitution, and as defined at the day of their original use therein, do not of themselves immovably fetter the sense or intention, for, if that were held to be the case, the Constitution intended to stand for all time, or at least for a long time, would by such restriction make of itself only a temporary document; it would so enchain itself as to be incapable, in a healthful and uniform manner, of any expansion or development or movement with the living current of the times, and would thereby hold within its embrace the certain means of its own ultimate destruction. 155 Miss. at 823-824, 125 So. at 416.
In Moore Judge Griffith was construing Section 147. He recognized that its underlying purpose was to avoid the possibility that a judgment or a decree would be reversed solely because the case had been brought in the wrong court. Indeed he noted that at the Constitutional Convention there was "strong minority sentiment" for combining the circuit and chancery courts into a single court and that
The most potent argument in favor of that proposal was the evil that often, after arduous and expensive litigation, a judgment or decree correct on the merits would be reversed solely on the point that the case had been instituted in the wrong court. 155 Miss. at 821, 125 So. 411.
Instead of combining the two courts, however, the Convention nevertheless sought to avoid the feared injustices
... . To cure the evil which was the chief basis of that argument, section 147 was devised and inserted in the Constitution.[16] 155 Miss. at 821, 125 So. 411.
In Moore the Court applied Section 147 to affirm a judgment in a factual setting hardly within the literal language of the constitutional provision  though easily within the scope of its spirit and the general evil with which the Convention was concerned.[17] Beyond Moore, this Court has been consistent in its adherence to the general principles of constitutional construction enumerated by Judge Griffith. Where the competing jurisdictions were the chancery court and the circuit court, as distinguished from a far more narrow "competition" between actions at law or suits in equity, we know of no recent case where this Court dismissed on appeal for want of such matter jurisdiction  Section 147 always standing as a bar. There can be no doubt that the proper construction of Section 147 in our Constitution must avoid the sort of harsh result the majority would decree here.
In two recent cases, McLean v. Green, 352 So.2d 1312 (Miss. 1977) and Louisville and Nashville Railroad Co. v. Hasty, 360 So.2d 925 (Miss. 1978), the Court construed Section 147 as we think it ought to be construed. In each of those cases a minor plaintiff brought a personal injury action in the chancery court claiming that the subject matter of the case involved "minor's business" and was thus within chancery court subject matter jurisdiction by virtue of Section 159 of the Mississippi Constitution of *932 1890. In each of those cases the minor plaintiff's tort claim was clearly within the subject matter jurisdiction of the circuit court. In each this Court held that the claim did not involve "minor's business" within the meaning of the constitutional section and, accordingly, that the chancery court did not have subject matter jurisdiction of the action. Still this Court affirmed stating
Although we hold that the chancellor was in error [in assuming subject matter jurisdiction] Mississippi Constitution, § 147 (1890) prevents reversal solely on the ground of want of jurisdiction... . 352 So.2d at 1314, 360 So.2d at 927.
If one were to construe Section 147 strictly, the phrase "equity ... jurisdiction" found there might be held to relate only to Section 159(a) of our Constitution which creates the judicial power of chancery courts over "all matters in equity". Such a construction, if adopted, would necessarily exclude from the coverage of Section 147 all other cases potentially within the subject matter jurisdiction of the chancery courts, those types of cases enumerated in Section 159(b)-(f), to-wit: cases the subject matter of which may be
(b) divorce and alimony;
(c) matters testamentary and of administration;
(d) minor's business;
(e) idiocy, lunacy, and persons of unsound mind; and
(f) cases of which the chancery courts had subject matter jurisdiction under the law in force when the Constitution of 1890 was put in operation.
McLean and L & N Railroad make it clear that the narrow, strict construction of Section 147 is not favored in this Court. Rather, those decisions necessarily proceed on the theory that Section 147 applies to all mistaken assumptions of subject matter jurisdiction by a chancery court, not just those where the chancery court erroneously held the case to fall within Section 159(a). In McLean and L & N Railroad chancery court subject matter jurisdiction was claimed ultimately on the authority of Section 159(d), minor's business. On appeal this Court held that the chancery court had mistakenly assumed jurisdiction but the Section 147 precluded reversal. We emphasize that in neither of those cases had the chancery court assumed jurisdiction because of a mistaken notion that the suit was one in equity under Constitution Section 159(a) and Code Section 9-5-81.
We are here confronted with an action brought in chancery court by Aubrey Wayne Bounds invoking subject matter jurisdiction under Section 11-31-1, the familiar chancery attachment statute. The legislature has the constitutional power to vest in the chancery courts subject matter jurisdiction of attachment suits. That power is found in Section 159(f) of the Mississippi Constitution of 1890. Such attachment suits were within the subject matter jurisdiction of the chancery courts at the time the Constitution became effective. Dinwiddie v. Glass, 111 Miss. 449, 71 So. 745 (1916). If, as McLean and L & N Railroad hold, mistaken assumptions of subject matter jurisdiction under Section 159(d) are covered by the no reversal provisions of Section 147, it follows that such mistakes in Section 159(f) cases are likewise covered. Such is the effect of the cryptic holding at the beginning of Judge Gillespie's opinion in Minter v. Hart, 208 So.2d 169, 170 (Miss. 1968).
Minter is the icing on the cake. There plaintiff brought his action in chancery court. He alleged subject matter jurisdiction under the chancery attachment statute. A Section 159(f) case! The chancery court assumed jurisdiction and tried the case on its merits even though there was "no ... proof to sustain an attachment in chancery." 208 So.2d at 170. This Court held that the chancery court should have dismissed for want of subject matter jurisdiction. Reversal, however, was held precluded under Section 147.
In summary, at this late date there can be no doubt that, at the very least, Section 147 should be understood to read

*933 No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of ... [chancery court] or ... [circuit court] jurisdiction; ...
If the Constitution be so read, the judgment below must be allowed to stand notwithstanding the chancery court's erroneous assumption of subject matter jurisdiction.

VII.
The Chancery Court of Forrest County, Mississippi, was without subject matter jurisdiction of this action. On the other hand, the action was and is within the subject matter jurisdiction of the Circuit Court. No other errors appearing in the record,[18] I would hold that Section 147 of the Mississippi Constitution of 1890 precludes reversal here. For these reasons I concur in the judgment of affirmance announced today by Justice Hawkins speaking for the majority.
PRATHER, J., joins in this opinion.
BROOM, Presiding Justice, dissenting:
Unable to accept the reasoning set forth in the majority opinion, I must state my views to the contrary.
Significantly the initial pleading filed by Bounds against Penrod is entitled "Bill of Complaint and Attachment in Chancery". The first numbered paragraph avers that Penrod is a Louisiana corporation on whom process cannot be had in Mississippi. Then he names the garnishee-defendants and charges that they are qualified to do business in Mississippi and "have property and effects" of Penrod in their possession. In his prayer, he asked that the garnishee-defendants' property be "attached" and "sold for the satisfaction" of Bounds' claim. Certain of the garnishee-defendants answered, denying having any of Penrod's effects but averred having "a continual contractual relationship with Penrod ... and from time to time" they sometimes are indebted to Penrod on "contract or open account".
Clearly the suit by Bounds is an "attachment" action as labeled by him and obviously is based upon Mississippi Code Annotated § 11-31-1, et seq. (1972), as the statutes were in 1978 when the suit was filed.[1] In responding to the attachment suit against it, Penrod asserted that the "Mississippi attachment *934 in chancery statutes, Mississippi Code Annotated sections 11-31-1 et seq. (1972) are and have been declared unconstitutional", and that, therefore, the garnishee-defendants were improperly made "garnishee" defendants.
Subsequent to Penrod's answer challenging the constitutionality of our attachment statutes as they then existed, Penrod never relented in asserting at every reasonable opportunity the unconstitutionality of those statutes.
In its brief filed herein, Penrod points out that the statutes (pre-1980) are unconstitutional on their face because the statutes allow for issuance of an attachment writ by Bounds' unilateral action without any opportunity being given to Penrod to contest the propriety of the attachment before issuance. Further, our statutes are unconstitutional because they allowed issuance of such a writ without having the matter submitted to any disinterested judicial officer and even without being required to post any security. These defects render the attachment statutes void and a nullity according to the pronouncements of the United States Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).
Two aspects of this interesting case stand out. First, the lower court lacked subject matter jurisdiction because there was no res (of the garnishee-defendants) located in Mississippi to be the proper factual basis of an attachment suit. Second, our attachment statutes, the vehicle carrying Bounds' cause, are on their face, unconstitutional. I know of no other judgment than the one before us (and none has been cited) where this Court or any other Supreme Court has affirmed the lower court's judgment, derived by attachment process, premised upon the tenuous grounds of no subject matter jurisdiction, lack of res, plus the other infirmity: unconstitutional statutes as the basis on which the process was initiated.
For the reasons stated above (there being no res, and the attachment statute being unconstitutional and therefore a nullity) the whole proceeding as "attachment in chancery" could have no legal force or effect. As stated above, Penrod from the very beginning asserted the unconstitutionality of the attachment statutes as an issue from which they never relented or conceded. The attachment statute itself, the point of beginning of the entire proceeding conducted below, being invalid resulted in an abortion of the whole process leaving it without any efficacious means whereby a valid award of damages could be made in Bounds' favor. It is much like a train on a railroad track  if the engine car is derailed or becomes inoperable there is nothing left to pull the train. Here the attachment (mechanism) was the intended engine of the whole proceedings but, being unconstitutional, left the suit or action without any pull or force to carry it along.
In view of the above, the following question becomes decisive: How can an unconstitutional chapter on attachment, §§ 11-31-1, et seq., supra, be rightly construed as a basis for Bounds' cause of action? It just cannot be done without departing from logic and adherence to sound legal principles.
This being the status of the matter, the underlying feature of subject matter jurisdiction must fail and be of no effect whatever. Penrod's entry of appearance was limited and specifically reserved the issue of "subject matter jurisdiction". As asserted by the garnishee-defendants, they had a "continual contractual relationship with Penrod"  protection of this relationship prompted Penrod to enter its limited (special) appearance and thereby gain dismissal of the garnishee-defendants. Penrod's limited appearance under these circumstances in no way established subject-matter jurisdiction in the lower court and in no way breathed life into or rehabilitated our unconstitutionally dead statutory basis of chancery attachment: §§ 11-31-1, et seq., supra.
Other features of attachment and cases on this procedure should be considered here.
The purpose of the Mississippi attachment *935 in chancery statutes[2] is to provide a mechanism whereby a party to whom an indebtedness is owed or who has some other claim against a nonresident owning property located within the confines of the state of Mississippi may attach that property in rem, and present his case in chancery on the underlying obligation. The statute is very broad in its coverage allowing such attachment any time a plaintiff has a "demand founded upon any indebtedness... ." § 11-31-1, supra (emphasis added). Language in some Mississippi cases is somewhat unclear as to whether the chancery court's power derives solely from the statutory authorization or whether such attachment proceedings are inherent in the court's equitable powers.[3] Nonetheless, as previously indicated, the requirements and proceedings are controlled by statute.
Attachment in chancery procedure has been traditionally viewed by this Court as a proceeding in rem.[4]Mid-South Paving Company v. State Highway Commission, 197 Miss. 751, 21 So.2d 646 (1945).
The statute § 11-31-1, supra, provides three basic requirements in order to activate its provisions giving the chancery court jurisdiction. Since these requirements are jurisdictional in nature, the failure or absence of any one requirement necessitates dismissal of the suit. Griffith, Mississippi Chancery Practice, § 484 (2d Ed. 1950). First of these requirements is a proper "demand" by the plaintiff which may be "founded upon any indebtedness." Secondly, the statute requires that such demand be against a nonresident debtor. Thirdly, for operation of the statute to vest jurisdiction in chancery court, the nonresident debtor must either have lands or tenements within the jurisdictional limits of the state, or persons in the state must "have in their hands effects of or are indebted to such nonresident, ... ." § 11-31-1, supra.
As an axiom derived from the above postulates, this Court has traditionally required that any debt in the hands of a third party present within the state which is sought to be attached must be one which is owing in praesenti. Ford v. Mutual Life Insurance Company of New York, supra; York v. York, 187 Miss. 465, 193 So. 330 (1940).
The requirement that the garnishee-defendant have in his hands at the time of the issuance of service, property, debts, or effects of the principal defendant forms the jurisdictional basis for this action as an in rem proceeding. The sina qua non required by the statute is the existence of a res upon which to operate. Martin v. Adams Mercantile Co., 203 Miss. 177, 33 So.2d 633 (1948), was filed under the chancery attachment statute, and the defendant appeared in court claiming that he did not own the property (real estate) in question. The Court noted that it lacked jurisdiction to hear the case if the property sought to be attached did not belong to the defendant. Likewise, Louis Werner Saw Mill Company v. Sheffield, 89 Miss. 12, 42 So. 876 (1906), held that the burden of proof was upon the plaintiff to establish the existence of such effects and their ownership, and that "the Court was without jurisdiction to entertain *936 this suit, and there should have been no statement of account ordered. There being no jurisdiction shown, all the proceedings should be dismissed." Id., at 18-19, 42 So. 876 (emphasis added).
In Duvall v. Duvall, 224 Miss. 546, 80 So.2d 752 (1955), we addressed ourselves to a definition and discussion of the nature of subject matter jurisdiction. In Duvall, Mrs. Duvall was appealing from a denial of separate maintenance. On cross-appeal, Mr. Duvall alleged as error the lower court's property division. He contended that, since the chancellor had found Mrs. Duvall not to be entitled to separate maintenance, the chancellor only possessed jurisdiction to dismiss the case. This Court, speaking through Justice Gillespie, discussed the nature and basic characteristics of subject matter jurisdiction:
It is a universal rule of law, recognized by the text writers and every court dealing with the question, that parties cannot, by consent, give a court, as such, jurisdiction of subject matter of which it would otherwise not have jurisdiction. Jurisdiction in this sense cannot be increased or diminished by the consent of the parties. 14 Am.Jur., Courts, Sec. 184; 21 C.J.S., Courts, Section 109, Holloman v. Holloman, 13 Miss. 559; Switzer v. Benny, 94 Miss. 209, 48 So. 401; Hauger, et al. v. Hauger, 376 Pa. 216, 101 A.2d 632; Griffith, Miss. Chancery Practice, Sec. 22.
224 Miss. at 552, 80 So.2d at 754.
When suit is brought in chancery under the attachment in chancery statutes, it is brought under a statutory procedure by which the chancery court can obtain jurisdiction over cases not normally within its province, and the court may adjudicate a class of cases over which it normally has no authority whatsoever. The wording of the statute itself and the interpretation which this Court has given the statute indicates that there are three jurisdictional requirements. Crescent Plywood Company v. Lawrence, 305 So.2d 343 (Miss. 1974), states:
Under this section [11-31-1 et seq.], Judge Griffith comments on the requisites to jurisdiction in V. Griffith, Mississippi Chancery Practice § 484, at 489-90 (2d ed. 1950):
"The proceeding is one primarily in rem; and in order to give jurisdiction in chancery by attachment against a nonresident there must exist the following factors: (1) The nonresidence of the debtor; and, (2) either (a) that he owns land in this state; or (b) that there are effects belonging to him in the hands of a person in this state, or (c) that there is some person in this state indebted to the said non-resident debtor, and (3) the issuance of the proper process against the land, or effects, or debt, as provided by the statute, so as to bring the res under the control of the court; and it is well settled that when the jurisdictional facts do not exist the proceedings must be dismissed, even though the nonresident defendant has appeared, provided that in his appearance he raise at the outset the defect as to jurisdiction, and thus does not waive it." (Footnotes omitted). (Emphasis added).
As was stated in York v. York, 187 Miss. 465, 480, 193 So. 330, 333 (1940):
"In order to sustain an attachment in chancery [against a nonresident defendant] there must be a debt owing from the non-resident, and there must be effects in the hands of the resident defendants, or lands must be attached in the manner provided by the statute to give the court jurisdiction."
Id., at 346-47.
It is necessary that the above-mentioned jurisdictional requirements establishing the subject matter jurisdiction of the chancery court exist at the time of the filing of the action. Subject matter jurisdiction must be proper at the time of filing the lawsuit. Minn. and St. Louis Railway Co. v. Peoria and P.U. Railway Co., 270 U.S. 580, 46 S.Ct. 402, 70 L.Ed. 743 (1926); Duvall v. Duvall, supra; Euclid-Mississippi v. Western Casualty and Surety Co., 249 Miss. 547, 163 So.2d 676 (1964).
*937 Searching the record before us fails to reveal the existence of a necessary jurisdictional fact because nothing in the record establishes that, at the time of the filing of Bounds' attachment in chancery, there was any indebtedness owing in praesenti to defendant Penrod by any of the garnishee-defendants.
This question (of indebtedness owing in praesenti) was neither briefed nor even addressed in the original briefs submitted by the parties in this appeal. In view of the fact that such a failure was probably induced by reliance upon the federal district court's construction of the statute[5] as allowing debts accruing after the filing of an attachment suit to be attached, we requested, received and have considered additional briefs on the question of whether there was owing, in praesenti, any obligation(s) by the garnishee-defendants at the time of the filing of the suit, and on the question of the effect of the absence of such a presently-owed debt.
From the above-cited cases, it is clear that the mere fact that Bounds and the principal defendant, Penrod, agreed as to the dismissal of the five garnishees who had answered denying any and all indebtedness to the principal defendant, did not constitute a waiver of the jurisdictional requirement set forth in the statute for the purpose of establishing subject matter jurisdiction in chancery court. As previously noted, requirements of subject matter jurisdiction may not be waived even with the consent of the parties. Therefore, Bounds' failure to come forward with proof establishing the existence of the alleged indebtedness at the time of the filing of the complaint and the issuance of process, results in the failure of subject matter jurisdiction as to those five answering garnishee-defendants.
A more difficult question is posed with respect to the three garnishee-defendants who did not file an answer to Bounds' bill of complaint and attachment in chancery. Normally it is true that the failure of a defendant to respond to allegations in a complaint results in those allegations being taken as true. Griffith, Mississippi Chancery Practice, § 259 (2d Ed. 1950). However, it is important to note that Bounds did not move for a decree pro confesso. His failure to move for a decree pro confesso upon the failure of the three garnishee-defendants to answer, coupled with the joint motion to dismiss all garnishee-defendants which expressly dispensed with the need for additional pleadings from the garnishee-defendants, must be taken as an admission by Bounds of the lack of substantiality to the charges set forth in the original bill of complaint as to the existence of a present indebtedness owed by the garnishee-defendants to Penrod, the principal defendant. This being the case, the jurisdictional basis for the original attachment lawsuit has collapsed. There is no res upon which an attachment may operate, and hence the court is without jurisdiction as such jurisdiction is set forth in the statute. With respect to this proposition, it is important to note that the chancellor's opinion (from which Bounds did not cross-appeal) in the case negates the existence of such a debt. Excerpted from his opinion is the following:
In Mississippi Chemical, large sums of money belonging to the Defendant were bound. In the case now under consideration, no funds belonging to Penrod were ever bound in the hands of the garnishee-defendants. This fact is uncontradicted in the record and is evidenced by the sworn Answers by the garnishee-defendants... . Further, there is no question about the binding of any sums which resulted from contracts entered into outside the State of Mississippi because no sums were ever bound. (Emphasis supplied).[6]
*938 According to our established case law, it is inescapable that the chancery court lacked subject matter jurisdiction by virtue of Bounds' failure to establish the existence of a present indebtedness owing by the garnishee-defendants to the principal defendant (Penrod) at the time of the issuance of the process upon the garnishee-defendants. Such a failure to meet the jurisdictional requirements of the attachment in chancery statutes requires reversal and dismissal of the case for want of subject matter jurisdiction regardless of the constitutionality of the attachment in chancery statutes.
It has been contended that language in Branham v. Drew Grocery Co., 145 Miss. 627, 111 So. 155, suggestion of error overruled (1927), possibly lends itself to a different construction. Nonetheless, the operative facts of Branham are so radically different from those in the case at bar as to render the dicta in Branham inapplicable to the instant case. In Branham, the garnishee-defendant bank admitted its possession in this state of the res in question (proceeds of a draft), but denied knowledge of the true ownership of those proceeds. An account with the garnishee-defendant bank was maintained by the principal defendant which held a balance of $1,595.07 on the date of attachment. In the instant case, no garnishee-defendant admitted any indebtedness and the res asserted by Bounds did not, in fact, exist.
Under the majority opinion, even if the chancery court did not have subject matter jurisdiction, § 147 of the Mississippi Constitution of 1890 precludes reversal by this Court solely on that basis. They have misconceived the nature of subject matter jurisdiction and the application of § 147. § 147 applies only where the lack of jurisdiction results from a case being brought in the wrong court with respect to questions of law versus questions of equity.
By means of hypothetical illustration: P, the victim of a tort, may erroneously bring a tort action seeking recovery for damages in chancery court. If no objection is made and the case is heard and decided upon the merits, the fact that P should have brought his action (an action at law) in circuit court will not constitute grounds for reversal by this Court under § 147. The critical factor in this analysis is that the tort action could have been properly brought in circuit court under the facts of the case and the law applicable to those facts. This is the proper interpretation of the application of § 147. In such a case there is missing no essential required fact enabling a court to act. In such a case, the judicial process operates upon facts, but in the case before us the entire proceeding depended upon proof that some garnishee-defendant (Exxon, et al.) was indebted to or had some property or effects of the principal defendant: Penrod. Not one scintilla of such proof was ever offered.
Thrust of the instant case is the in rem statutory procedure of attachment, and nothing changed it from an attachment suit even though Bounds' was asserting, as an underlying claim, damages for a tort. Nothing being available to attach, this attachment proceeding could not have properly been brought in either chancery or circuit court. Likewise, had the parties moved for transfer to circuit court, such motion would have been properly denied because the jurisdictional requirements of the statute were not met. The only proper action for the court would have been dismissal since, under these facts and circumstances, it is clear that § 147 is inapplicable. The instant case does not involve a mistake of proper jurisdiction, but rather the total lack of jurisdiction.
Appellee cites Minter v. Hart, 208 So.2d 169 (Miss. 1968), as authority for the proposition that § 147 of the Mississippi Constitution precludes reversal. Close and careful *939 scrutiny of both our opinion, the original record, and the briefs in Minter reveals that it is clearly distinguishable from the case at bar and not controlling. Both pleadings and proof in Minter made out a prima facie case for an attachment suit at law under §§ 2675-2728 of the Mississippi Code of 1942 (the precursor of our present attachment at law statute). In Minter the pleadings precisely charged, the answer admitted, and the proof established that all parties were resident citizens of Mississippi, and the res (land), subject of the attachment, was within Mississippi. The complainant merely brought suit in the wrong court, i.e. chancery.
In the instant case, the pleadings and proof would not have made a prima facie case for attachment in either chancery or circuit court. Therefore, § 147 of the Mississippi Constitution does not apply.
Thus it can be seen that § 147 applies when an action is mistakenly filed in the wrong court (law vs. equity). The present suit was filed in the proper court under correct procedures but Bounds failed to establish the statutory jurisdictional requirements necessary to give the chancery court the power to go to the merits of Bounds' tort claim. Bounds' averment of an indebtedness owing to Penrod was without factual basis, and thus he failed to fulfill the statutory jurisdictional requirements. Mississippi Power & Light Co. v. Ross, 168 Miss. 400, 150 So. 830 (1934). The majority opinion will be construed as allowing plaintiffs to indulge in the rankest type "forum shopping" never contemplated under § 147, supra, or our attachment statutes, supra.
In its rebuttal brief, Penrod raises the question: May an unconstitutional statute serve as the sole jurisdictional predicate for Bounds' cause of action? Last paragraph of the majority opinion concludes with the statement that whether "our chancery attachment statutes were unconstitutional is irrelevant... ." The majority's holding that whether the statute is unconstitutional is "irrelevant" runs counter to sound judicial principles.
As stated at the outset of this dissent, I find the majority's decision today to be incorrect for three basic reasons. First, there was admittedly no res ever attachable; therefore, there was no subject matter jurisdiction under the attachment in chancery statutes. A personal appearance by the defendant cannot cure such a fatal flaw. As we stated in Jacobson v. Jones, 236 Miss. 640, 111 So.2d 408 (1959):
The personal appearance of the parties in the proceeding cannot confer jurisdiction over the subject matter. In 14 Am. Jur., page 386, Sec. 191 appears this pronouncement: "As heretofore shown, the jurisdiction of the court over the subject matter of a cause of action must be conferred by law, and it cannot under any circumstance be conferred on a court, as such, by consent of the parties. It materially follows that if jurisdiction cannot be conferred by consent, the want thereof cannot be waived by any act of the parties."
236 Miss. at 651, 111 So.2d at 411.
Second, § 147 would preclude our reversal only if the sole error was a mistake between equitable and legal jurisdiction. Here there was no jurisdiction. Finally, the entire procedure which provided the framework for the instant case, §§ 11-31-1 et seq., is admittedly one of the most glaring examples of a denial of due process as may be found in any prejudgment seizure procedure in any state in this country.
For reasons stated above, though with much deference, I file this dissent.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE, J., join in this dissent.
NOTES
[1] Texaco, Inc.,; Gulf Oil Corporation; Exxon Corporation; Amoco Oil Company; Mobil Oil Corporation; Pennzoil Company, Ashland Oil, Inc.; and Union Oil Company of California.
[2] Indeed, Penrod had previously agreed not to seek a transfer in the January 16, 1979, decree.
[3] Following these decisions, the Mississippi Legislature amended the procedures for attaching indebtednesses and property under our attachment statute, thereby curing the problems set forth in these cases. See 1980 Miss. Laws ch. 467, codified as Miss. Code Ann. §§ 11-31-2 (Supp. 1982), 11-31-3 (Supp. 1982), 11-31-5 (Supp. 1982), and 11-31-9 (Supp. 1982). Miss. Code Ann. § 11-31-1 (1972), however, was not amended.
[4] Bounds had a dubious basis to proceed against Penrod in any court in Mississippi, whether chancery, circuit or United States district court. Penrod was a foreign corporation, had not qualified to, and did no business in Mississippi. The cause of action accrued for an injury which occurred altogether outside Mississippi, and had no connection with this state. Further, process on Penrod was by publication.
[1] For convenience we will here employ the nomenclature now in effect. Mr. Bounds is the "plaintiff" instead of "complainant". His pleading is the "complaint" instead of the "Bill of Complaint". And so forth.
[2] The Jones Act has a three year statute of limitations. See 46 U.S.C. § 688, 45 U.S.C. § 56, and McAllister v. Magnolia Petroleum Company, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958). Bounds' claim accrued on March 18, 1976. He brought his action in Chancery Court on December 15, 1978, well within the applicable limitations period. If the judgment below had been reversed, we would assume that Bounds would have had yet another year within which to bring a new action in Circuit Court, or, if he had wished, a Court of the United States of otherwise competent jurisdiction. See Section 15-1-69, Miss. Code Ann. (1972); Ryan v. Wardlaw, 382 So.2d 1078 (Miss. 1980). Though his action would not have been lost forever, Bounds would have had to go through the agonies of another trial. See Magee v. Griffin, 345 So.2d 1027, 1032, (Miss. 1977). His witnesses may have died, disappeared or suffered lapses of memory. He would have had to begin anew a journey he had every reason to think he had completed.
[3] The term "judicial jurisdiction" is an umbrella term that includes the familiar in personam jurisdiction, in rem jurisdiction, and quasi in rem jurisdiction.
[4] Justice Holmes recognized the point in a similar context in United States v. Freights of the Mount Shasta, 274 U.S. 466, 47 S.Ct. 666, 71 L.Ed. 1156 (1927) when he wrote

It is said that the Court derives its jurisdiction from its power, and no doubt its jurisdiction ultimately depends on that. But the jurisdiction begins before actual seizure, and authorizes a warrant of arrest, which may or may not be successful. 274 U.S. at 471, 47 S.Ct. at 667, 71 L.Ed. at 1157. [Emphasis added]
The jurisdiction which begins before actual seizure, of course, includes both subject matter jurisdiction and jurisdiction to determine jurisdiction.
[5] An example drawn from this case may serve to underscore the distinction which must sharply be drawn between subject matter jurisdiction and judicial jurisdiction. Insofar as the complaint charges that one or more of the eight garnishee-defendants hold a res, i.e., an indebtedness, owned by the in personam defendant, Penrod, and that seizure of this res may establish judicial jurisdiction in Forrest County, Mississippi, it borders upon the frivolous. In light of Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), we detect no way Mississippi could have subjected Penrod to an adjudication of its rights in these alleged indebtednesses (a) consistent with constitutional restrictions upon the power of this State as a consequence of its territorial limitations or (b) by virtue of rights secured to Penrod by the due process clause of the Fourteenth Amendment to the Constitution of the United States. There was a potent argument that could have been advanced by Penrod against judicial jurisdiction. Still there is no reason in law or policy why Bounds should be discouraged from making this frivolous allegation of judicial jurisdiction, hoping for a waiver by Penrod.

On the face of things, plaintiff had a far more legitimate basis for alleging (and thinking he could establish) subject matter jurisdiction than judicial jurisdiction. All that plaintiff needed to establish in order to bring the case within the subject matter jurisdiction of the Chancery Court was the existence of an indebtedness owed by one or more of the eight garnishee-defendants to Penrod. True, plaintiff had to prove the fact of such an indebtedness. Practically speaking, it was not unreasonable to assume that one or more of these eight oil companies named as garnishee-defendants did business with and thus owed an indebtedness to Penrod. Conversely, it seems a reasonable guess that Penrod performed drilling services for one or more of these companies as a result of which the requisite indebtedness might have arisen. Under the well pleaded complaint rule described above, plaintiff was perfectly free to make such a "reasonable guess". And if, as a matter of fact, he had established the existence of any such indebtedness, he would have been home free on the subject matter jurisdiction issue.
The fact that plaintiff had (short of the waiver that was in fact entered) no hope of subjecting Penrod to in personam jurisdiction in this Court, or Penrod's accounts receivable to quasi in rem jurisdiction, does not mean that plaintiff's claim of subject matter jurisdiction runs afoul of the fraud or collusion exception mentioned above. Plaintiff's good faith guess that one or more of these oil companies did owe Penrod money is an aspect of the complaint subject to the well pleaded complaint rule for purposes of subject matter jurisdiction. If plaintiff had only proved the fact of just one such indebtedness, the chancery court would have had subject matter jurisdiction, without regard to whether the res or indebtedness were ever formally attached.
In short, and perhaps ironically the jurisdictional matter with respect to which Bounds' jurisdictional allegations appear frivolous and maybe even made in bad faith was subject to cure by Penrod's waiver. On the other hand, the good faith and certainly not unreasonable allegation of jurisdictional facts necessarily requisite for subject matter jurisdiction may not be confessed or waived.
[6] We are not unaware of Moore v. Mississippi Hospital and Medical Service, 317 So.2d 919 (Miss. 1975). If, as here, defendant moves to dismiss, not to transfer, and if, as here, the motion ought to be granted, plaintiff has the right to "accept" dismissal. Forcing upon litigants affirmative relief, e.g., transfer to circuit court, which no one has sought, is a dubious practice. Surely this Court would not deny such a "dismissed" plaintiff the prerogative of accepting dismissal in lieu of transfer.
[7] With apologies to the late Sir Winston Churchill, the structure of the above sentence seems somehow appropriate.
[8] Penrod filed a motion to dismiss for lack of subject matter jurisdiction on April 21, 1980. That motion should have been granted.
[9] When the Jones Act seaman brings his action in United States District Court, he has the option to designate his action as one "at law" by invoking any one or more of three separate federal jurisdictional bases: federal question jurisdiction (28 U.S.C. § 1331), diversity of citizenship (28 U.S.C. § 1332), or regulation of commerce (28 U.S.C. § 1337). If he does this, and makes timely demand, he gets a jury trial. On the other hand, if the plaintiff wishes to foreclose the possibility of his action being heard by a jury, he may style his action as one "in admiralty", asserting jurisdiction under 28 U.S.C. § 1333 and invoking Rule 9(h), F.R. Civ.P. State courts, of course, have no admiralty jurisdiction. 28 U.S.C. § 1333. When brought in a state court a Jones Act action is necessarily an action at law.
[10] The Jones Act, 46 U.S.C. § 688, incorporates by reference the Federal Employers' Liability Act [FELA], 45 U.S.C. §§ 51, et seq. By the enactment of the Jones Act, the Congress made available to seamen remedies against their employers identical to the remedies FELA had granted railroad workers. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 546-547, 80 S.Ct. 926, 930-31, 4 L.Ed.2d 941, 946 (1960). Jones Act and FELA cases are routinely cited interchangeably. Greenhaw v. Pacific-Atlantic S.S. Corp., 190 Or. 182, 224 P.2d 918 (1950); Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352 (1951).
[11] Ordinarily it might be said with confidence that a chancellor has no more business hearing and entertaining an adjudication of a Jones Act case than he would any other variety of personal injury damage suit. And where there is an objection to the chancellor proceeding in such matters, even where the proceeding is labeled a chancery attachment and where there is no question regarding the validity of the attachment, it would seem that on proper motion the matter should be transferred to the Circuit Court. See Robertson v. Evans, 400 So.2d 1214 (Miss. 1981). After all, the trial by jury provision is a part of the Jones Act itself and ought to be binding on whatever court the State of Mississippi furnishes to hear the case. Illinois Central Railroad Co. v. Coussens, 223 Miss. 103, 113, 117, 77 So.2d 818, 821, 823 (1955). To the extent that the constitutional parameters of the right to trial by jury may be implicated in a Jones Act case heard in a court of this state, we look to Section 31 of the Mississippi Constitution of 1890, not the Seventh Amendment. See Minneapolis and St. Louis Railroad Co. v. Bombolis, 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961, 965 (1916).
[12] The fact that a plaintiff prays for a remedy beyond the power of the court to grant has never been thought to deprive the court of subject matter jurisdiction of so much of the claim and prayer as may be within the court's power. Until Tideway Oil Programs v. Serio, 431 So.2d 454 (Miss. 1983), the chancery courts of this state had no power to award punitive damages. See Monsanto Company v. Cochran, 254 Miss. 399, 404-405, 180 So.2d 624, 626 (1965). Yet, if a complaint stated a claim otherwise within chancery court subject matter jurisdiction, that jurisdiction was not ousted by the fact that the over zealous plaintiff also prayed for punitive damages. Compare M.T. Reed Construction Company v. Nicholas Acoustics and Specialty Company, 387 So.2d 98 (Miss. 1980).
[13] For purposes of Section 9-7-81, the Jones Act is as much a part of the "laws of this state" as if it had been enacted by the Mississippi Legislature and codified in the Mississippi Code of 1972. Such is the effect of the decisions of the Supreme Court of the United States, grounded ultimately upon the authority of the Supremacy Clause, in Mondou v. New York, New Haven and Hartford Railroad Co., 223 U.S. 1, 55-59, 32 S.Ct. 169, 177-79, 56 L.Ed. 327, 348-350 (1912); Minneapolis & St. Louis Railroad Company v. Bombolis, 241 U.S. 211, 222-223, 36 S.Ct. 595, 598-99, 60 L.Ed. 961, 965 (1916).
[14] The State must furnish to the F.E.L.A. and Jones Act plaintiff some forum in which to assert his claim. As indicated above, in this state these cases have traditionally been heard in the Circuit Courts.
[15] Here we plagiarize from Chief Justice Marshall in McCulloch v. Maryland, 17 U.S. 316, 407, 4 Wheat. 316, 407, 4 L.Ed. 579, 601 (1819).
[16] Although the Convention stopped short, adopting only Section 147, we have in recent years continued to ease toward "merger". In McClendon v. Mississippi State Highway Commission, 205 Miss. 71, 38 So.2d 325 (1949) this Court held that a chancery court could adjudicate a "mixed" controversy, even though the equity issues had been dismissed and only legal matters remained at the time of trial. Although the practice is not encouraged, trial of pure actions at law disguised as chancery attachments has been allowed in the chancery courts and such could have occurred here if only plaintiff Bounds had proved the requisite jurisdictional facts; but see Robertson v. Evans, 400 So.2d 1214 (Miss. 1981). Conversely, if equitable issues are asserted in an action in circuit court and if they are properly adjudicated, this Court will not reverse. Dilworth v. Federal Reserve Bank of St. Louis, 170 Miss. 373, 150 So. 821 (1933).
[17] Moore concerned a case heard erroneously on the equity side of the county court, when it should have been heard on the law side. The Court went outside the literal language of Section 147 and decided Moore on the basis of the principle implied therein.
[18] In support of its argument against subject matter jurisdiction, Penrod says much about the alleged unconstitutionality of our chancery attachment statutes. See Mississippi Chemical Corp. v. Chemical Construction Corp., 444 F. Supp. 925 (S.D.Miss. 1977), and MPI, Inc. v. McCullough, 463 F. Supp. 887 (N.D.Miss. 1978). The argument proceeds seemingly unaware (a) that this question conceptually may not be reached until subject matter jurisdiction is established, (b) that this question is in no way implicated or intertwined in the subject matter jurisdiction controversy so central to this case, and (c) in any event, that since nothing was seized no property could possibly have been taken without due process of law.

Penrod admits no property was seized. Instead, it relies upon the supposed threat of seizure. Penrod claims that it made its entry of appearance here to avoid embarrassment in its business relationships with the eight garnishee-defendants. The argument is not persuasive. Beyond that, it misses the point. That the chancery attachment statutes may allow seizures of property (or threats of seizures) sans due process in no way infects the power of so much of Section 11-31-1 as confers subject matter jurisdiction upon the chancery courts. As explained above, Penrod should prevail (albeit temporarily, in our view) on the subject matter jurisdiction issue, not because its property was seized (or threatened with seizure) without due process, but because Bounds has failed to prove a requisite jurisdictional fact, i.e., the existence of an indebtedness owed Penrod by one or more of the eight garnishee-defendants. The unconstitutionality argument is thus irrelevant to the subject matter jurisdiction issue. More properly it relates to our Section 147 inquiry, for if accepted Penrod's thesis here would be an "error in the proceedings other than as to jurisdiction". As such, Section 147's bar against reversal would be lifted. As indicated, however, we would reject the unconstitutionality argument on its merits and on the authority of Section 147 affirm.
[1] Effective July 1, 1980, our statutes on chancery attachments were amended for the obvious purpose of curing defects in the statutes as worded before July 1, 1980, and as discussed herein infra.
[2] The Mississippi attachment in chancery statutes were amended in 1980 (1980 Mississippi Laws, Chapter 467, effective from and after July 1, 1980). The present action was brought under the statute prior to its amendment by the legislature, and therefore all references to the Mississippi Attachment in Chancery statutes are to the unamended version unless otherwise indicated.
[3] Note the discussions of the historical origins of attachment in chancery procedures contained in Scruggs v. Blair, 44 Miss. 406 (1870), Dollman v. Moore, 70 Miss. 267, 12 So. 23 (1892), and Boyett v. Boyett, 152 Miss. 201, 119 So. 299 (1928).
[4] The traditional distinction between in rem, quasi in rem, and in personam actions has lost much of its significance in view of the decision of the United States Supreme Court in Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The Supreme Court held that all questions of jurisdiction over a defendant can no longer be evaluated purely in terms of in rem, quasi in rem, or in personam. The distinction made here is not for the purpose of evaluating the sufficiency of the contracts of a principal defendant with the forum state in an attachment in chancery action, but rather is intended to show the step-by-step process involved in the operation of the statute.
[5] See MPI, Inc. v. McCullough, 463 F. Supp. 887 (N.D.Miss. 1978), and Mississippi Chemical Corp. v. Chemical Construction Corp., 444 F. Supp. 925 (S.D.Miss. 1977).
[6] In making the above finding, the chancellor was apparently seeking to distinguish the instant case from the Federal District Court case of Mississippi Chemical Corp., supra, and MPI, Inc. v. McCullough, supra, by indicating that in the instant case, since no property was attached, the due process requirements of the Fourteenth Amendment were not triggered. Nonetheless, since the question of subject matter jurisdiction is a threshold question, such a finding would seem, in view of the state of the record, to conclusively establish that there was no present indebtedness which could establish subject matter jurisdiction in the Chancery Court of Forrest County.