## MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY *v.* BOMBOLIS, ADMINISTRATOR OF NANOS.

### ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 478.  Argued April 19, 20, 1916.—Decided May 22, 1916.

The Seventh Amendment exacts a trial by jury according to the course of the common law, that is, by a unanimous verdict.

The first ten Amendments are not concerned with state action and deal only with Federal action.

The Seventh Amendment applies only to proceedings in courts of the United States; it does not in any manner govern or regulate trials by jury in state courts, nor does it apply to an action brought in the state court under the Federal Employers' Liability Act.

A verdict in a state court in an action under the Employers' Liability Act, which is not unanimous, but which is legal under the law of the State, is not illegal as violating the Seventh Amendment.

While a state court may enforce a right created by a Federal statute,

such court does not, while performing that duty, derive its authority
as a court from the United States but from the State, and the Seventh
Amendment does not apply to it.

128 Minnesota, 112, affirmed.

THE facts, which involve the validity of a verdict and
judgment under the Employers' Liability Act and the
application and effect of the Seventh Amendment in
suits in the state courts under that Act, are stated in
the opinion.

*Mr. Frederick M. Miner*, with whom *Mr. William H.
Bremner* was on the brief, for plaintiff in error: [1]

The right of trial by jury which is secured to all persons
subject to the jurisdiction of the United States, by the pro-

_____

[1] The question of the Seventh Amendment as affecting Federal
Employers' Liability cases in state courts was involved in several cases
which were simultaneously argued on April 19, 20, 1916 (see pp. 218,
219, *post*), and in which a joint brief was filed for the various plaintiffs
in error by Mr. Jno. T. Shelby, Mr. E. L. Worthington, Mr. W. D.
Cochran, Mr. Le Wright Browning, Mr. David H. Leake and Mr.
Walter Leake for Chesapeake & Ohio Railway, Mr. W. F. Evans for
St. Louis & San Francisco Railroad, Mr. William H. Bremner and
Mr. Frederick M. Miner for Minneapolis & St. Louis Railway, Mr.
Benjamin D. Warfield for Louisville & Nashville Railroad, and a joint
brief was filed for the various defendants in error by Mr. Ed. C. O'Rear
and Mr. B. G. Williams for Kelly, Adm'x, Mr. C. B. Stuart, Mr. A. C.
Cruce and Mr. M. K. Cruce for Brown, Mr. R. S. Dinkle and Mr.
George B. Martin for Gainey, Adm'r, Mr. George B. Leonard for
Bombolis, Adm'r, Mr. B. F. Procter, Mr. George H. Lamar, Mr. C. U.
McElroy and Mr. D. W. Wright for Stewart's Adm'r, Mr. C. W. Allen
and Mr. H. W. Walsh for Carnahan.

The cases were orally argued by Mr. Benjamin D. Warfeld, Mr.
David H. Leake and Mr. Frederick M. Miner for the various plaintiffs
in error, and by Mr. Edward C. O'Rear and Mr. George H. Lamar for
the various defendants in error.

These cases are as follows: *Minneapolis & St. Louis R. R.* v. *Bombolis;
St. Louis & San Franciso Railroad* v. *Brown, post*, p. 223; *Chesapeake &
Ohio Railway* v. *Carnahan, post*, p. 241; *Louisville & Nashville Railroad*
v. *Stewart, post*, p. 261; *Chesapeake & Ohio Railway* v. *Kelly's Adminis-
trator, post*, p. 000; *Chesapeake & Ohio Railway* v. *Gainey, post*, p. 000.

visions of the Seventh Amendment, means a jury of twelve men who must, in finding facts, act unanimously. *Am. Publishing Co.* v. *Fisher*, 166 U. S. 464; *Springville* v. *Thomas*, 166 U. S. 707; *Capital Traction Co.* v. *Hof*, 174 U. S. 1.

The "right," which is secured by the Seventh Amendment is not a matter of procedure but of substance, and one possessing such right cannot be deprived of it by any means short of an amendment to the Constitution. Cases, *supra*, and *Walker* v. *New Mexico &c. R. R.*, 165 U. S. 593; *Slocum* v. *N. Y. L. Ins. Co.*, 228 U. S. 364.

The Seventh Amendment is a limitation upon all of the powers delegated by the Constitution, to those agencies which comprise the government of the United States; therefore, not only the courts but the legislature of the United States is limited by this Amendment, and the right secured thereby enters into and controls all suits founded upon legislation enacted by Congress in whatever court the same may be brought, where such court sits and exercises power within the domain of the United States. Cases, *supra*, and *Walker* v. *Southern P. R. Co.*, 165 U. S. 595; *Bauman* v. *Ross*, 167 U. S. 592; *Thompson* v. *Utah*, 170 U. S. 343, 350; *Guthrie Bank* v. *Guthrie*, 173 U. S. 528-537; *Maxwell* v. *Dow*, 176 U. S. 581, 596; *Black* v. *Jackson*, 177 U. S. 349; *Downes* v. *Bidwell*, 182 U. S. 244, 270; *Rassmussen* v. *United States*, 197 U. S. 516, 526; *Second Employers' Liability Cases*, 223 U. S. 1, 55; *Cent. Vermont R. R.* v. *White*, 238 U. S. 507; *Atl. Coast Line* v. *Burnette*, 239 U. S. 199.

A state court can derive no authority from the power which creates it to adjudicate controversies based upon the Federal act. *Ableman* v. *Booth*, 21 How. 506; *Levin* v. *United States*, 128 Fed. Rep. 826.

The principles of law comprised within the term comity, by which courts entertain controversies involving rights created by sovereign power, other than that which created such courts, do not afford the basis or ground upon which

state courts may exercise their powers in controversies founded upon the Federal act. *Claflin* v. *Houseman*, 93 U. S. 130; *Second Employers' Liability Cases*, 223 U. S. 1.

The dictum, to the effect that the principle of comity by analogy may be involved in this question, is inadmissible, and with due respect, seems to involve a contradiction. *Zikos* v. *Oregon R. & N. Co.*, 179 Fed. Rep. 893.

When "comity" is the basis of judicial determination the court extending the comity out of favor and good will, extends to foreign laws an effect they would not otherwise have. *Stowe* v. *Belfast Bank*, 92 Fed. Rep. 90, 96. But its obligation is not imperative. *Mast, Foos & Co.* v. *Stover Mfg.*, 177 U. S. 485. See also *Hilton* v. *Guyot*, 159 U. S. 113; *People* v. *Martin*, 175 N. Y. 315.

Congress in the legitimate exercise of the power conferred upon it may withhold jurisdiction to try causes founded upon laws passed by it, or can confer exclusive jurisdiction with respect to such matters upon the Federal courts. *Claflin* v. *Houseman*, 93 U. S. 130; *The Moses Taylor*, 4 Wall. 411.

Congress may not, however, withhold from people subject to the jurisdiction of the United States, and whose rights are controlled by the Federal Employers' Liability Act, the protection offered by the Seventh Amendment.

State courts in deciding controversies founded upon this act are applying the judicial power of the United States, and if it be held that the Seventh Amendment is a limitation only upon that power, state courts could not enforce such power apart from the limitation of the said amendment. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Cohens* v. *Virginia*, 6 Wheat. 414.

The judicial power of the United States is co-extensive with its legislative power. *Cohens* v. *Virginia, supra.*

If a case is not within the judicial power of the United States an appeal would not lie to this court, for it is self-evident that one sovereign power cannot exercise super-

vision over the judiciary of another. *Martin* v. *Hunter,*
1 Wheat. 304; *Cohens* v. *Virginia, supra.*

A substantive right or defense arising under the Federal
law cannot be lessened or destroyed by a rule of procedure.
*Norfolk &c. R. R.* v. *Ferebee,* 238 U. S. 269. Nor can a right
protected by the Constitution of the United States be
lessened or destroyed by a state court, under the guise of
procedure.

*Mr. George H. Lamar,* with whom *Mr. B. F. Proctor,
Mr. C. U. McElroy* and *Mr. D. W. Wright* were on the
brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the
court.

Counting upon the Employers' Liability Act of 1908
(c. 149, 35 Stat. 65) as amended by the act of 1910
(c. 143, 36 Stat. 291), the defendant in error sued in a state
court to recover for the loss resulting from the death of
Nanos, his intestate, alleged to have been occasioned by
the negligence of the plaintiff in error while he, Nanos,
was in its employ and engaged in interstate commerce.

Whatever may have been the controversies in the trial
court prior to the verdict of the jury in favor of the plain-
tiff and the contentions which were unsuccessfully urged
in the court below to secure a reversal of the judgment
entered thereon, on this writ of error they have all but
one been abandoned and hence have all but one become
negligible. As the one question here remaining was also
involved in five other cases pending under the Employers'
Liability Act on writs of error to the courts of last resort
of Virginia, Kentucky and Oklahoma, those cases and
this were argued together. As the other cases however
involve additional questions, we dispose separately of
this case in order to decide in this the one question which
is common to them all and thus enable the other cases,

if we deem it is necessary to do so, to be treated in separate opinions.

By the constitution and laws of Minnesota in civil causes after a case has been under submission to a jury for a period of twelve hours without a unanimous verdict, five-sixths of the jury are authorized to reach a verdict which is entitled to the legal effect of a unanimous verdict at common law. When in the trial of this case the court instructed the jury as to their right to render a verdict under such circumstances, the defendant company objected on the ground that as the cause of action against it arose under the Federal Employers' Liability Act—in other words, was Federal in character—the defendant was by the Seventh Amendment to the Constitution of the United States entitled to have its liability determined by a jury constituted and reaching its conclusion according to the course of the common law, and hence to apply the state statute would be repugnant to the Seventh Amendment. This objection which was overruled and excepted to was assigned as error in the court below, was there adversely disposed of (128 Minnesota, 112), and the alleged resulting error concerning such action is the one question which we have said is now urged for reversal.

It has been so long and so conclusively settled that the Seventh Amendment exacts a trial by jury according to the course of the common law, that is, by a unanimous verdict (*American Publishing Co.* v. *Fisher,* 166 U. S. 464; *Springville* v. *Thomas,* 166 U. S. 707; *Capital Traction Co.* v. *Hof,* 174 U. S. 1), that it is not now open in the slightest to question that if the requirements of that Amendment applied to the action of the State of Minnesota in adopting the statute concerning a less than unanimous verdict or controlled the state court in enforcing that statute in the trial which is under review, both the statute and the action of the court were void because of repugnancy to the Constitution of the United States. The one

question to be decided is therefore reduced to this: Did the Seventh Amendment apply to the action of the state legislature and to the conduct of the state court in enforcing at the trial the law of the State as to what was necessary to constitute a verdict?

Two propositions as to the operation and effect of the Seventh Amendment are as conclusively determined as is that concerning the nature and character of the jury required by that Amendment where applicable. (a) That the first ten Amendments, including of course the Seventh, are not concerned with state action and deal only with Federal action. We select from a multitude of cases those which we deem to be leading. *Barron* v. *Baltimore*, 7 Pet. 243; *Fox* v. *Ohio*, 5 How. 410, 434; *Twitchell* v. *Commonwealth*, 7 Wall. 321; *Brown* v. *New Jersey*, 175 U. S. 172, 174; *Twining* v. *New Jersey*, 211 U. S. 78, 93. And, as a necessary corollary, (b) that the Seventh Amendment applies only to proceedings in courts of the United States and does not in any manner whatever govern or regulate trials by jury in state courts or the standards which must be applied concerning the same. *Livingston* v. *Moore*, 7 Pet. 469, 552; *The Justices* v. *Murray*, 9 Wall. 274; *Edwards* v. *Elliott*, 21 Wall. 532; *Walker* v. *Sauvinet*, 92 U. S. 90; *Pearson* v. *Yewdall*, 95 U. S. 294. So completely and conclusively have both of these principles been settled, so expressly have they been recognized without dissent or question almost from the beginning in the accepted interpretation of the Constitution, in the enactment of laws by Congress and proceedings in the Federal courts, and by state constitutions and state enactments and proceedings in the state courts, that it is true to say that to concede that they are open to contention would be to grant that nothing whatever had been settled as to the power of state and Federal governments or the authority of state and Federal courts and their mode of procedure from the beginning. Doubtless it was

this view of the contention which led the Supreme Court
of Minnesota in this case and the courts of last resort of
the other States in the cases which were argued with this
to coincide in opinion as to the entire want of foundation
for the proposition relied upon, and in the conclusion that
to advance it was virtually to attempt to question the
entire course of judicial ruling and legislative practice
both state and National which had prevailed from the
commencement.   And it was of course presumably an
appreciation of the principles so thoroughly settled which
caused Congress in the enactment of the Employers'
Liability Act to clearly contemplate the existence of a
concurrent power and duty of both Federal and state
courts to administer the rights conferred by the statute
in accordance with the modes of procedure prevailing
in such courts.   Indeed, it may not be doubted that it
must have been the same point of view which has caused
it to come to pass that during the number of years which
have elapsed since the enactment of the Employers'
Liability Act and the Safety Appliance Act and in the
large number of cases which have been tried in state
courts growing out of the rights conferred by those acts,
the judgments in many of such cases having been here
reviewed, it never entered the mind of anyone to suggest
the new and strange view concerning the significance and
operation of the Seventh Amendment which was urged
in this case and the cases which were argued with it.

Under these circumstances it would be sufficient to leave
the unsoundness of the proposition to the demonstration
to result from the application of the previous authorita-
tive rulings on the subject and the force of the reasoning
inherently considered upon which they were based, as
also upon its convincing power so aptly portrayed by the
opinions of the courts below in this and the other cases
which we have said were argued along with this. *Ches.
& Ohio Ry.* v. *Carnahan,* a Virginia case; *Ches. & Ohio*

*Ry.* v. *Kelly*, 160 Kentucky, 296; 161 Kentucky, 655; *Louis & Nash. R. R.* v. *Stewart*, 163 Kentucky, 823; *St. Louis & San Fran. R. R.* v. *Brown*, an Oklahoma case. (See note, p. 212, *ante*.) In view, however, of the grave misconception of the very fundamentals of our constitutional system of government which is involved in the proposition relied upon and the arguments seeking to maintain it, and the misapplication of the adjudged cases upon which the arguments rest, while not implying that the question is an open one, we nevertheless notice a few of the principal propositions relied upon.

1. It is true as pointed out in *Walker* v. *New Mexico & S. P. R. R.*, 165 U. S. 593, and in *Am. Publishing Co.* v. *Fisher*, 166 U. S. 464, that the right to jury trial which the Seventh Amendment secures is a substantial one in that it exacts a substantial compliance with the common-law standard as to what constitutes a jury. But this truth has not the slightest tendency to support the contention that the substantial right secured extends to, and is operative in, a field to which it is not applicable and with which it is not concerned. It is also true, as pointed out in the cases just cited, that although territorial courts of the United States are not constitutional courts, nevertheless as they are courts created by Congress and exercise jurisdiction alone by virtue of power conferred by the law of the United States, the provisions of the Seventh Amendment are applicable in such courts. But this affords no ground for the proposition that the Amendment is applicable and controlling in proceedings in state courts deriving their authority from state law, in the teeth of the express and settled doctrine that the Amendment does not relate to proceedings in such courts.

2. The proposition that as the Seventh Amendment is controlling upon Congress, its provisions must therefore be applicable to every right of a Federal character created by Congress and regulate the enforcement of

such right, but in substance creates a confusion by which the true significance of the Amendment is obscured. That is, it shuts out of view the fact that the limitations of the Amendment are applicable only to the mode in which power or jurisdiction shall be exercised in tribunals of the United States, and therefore that its terms have no relation whatever to the enforcement of rights in other forums merely because the right enforced is one conferred by the law of the United States. And of course it is apparent that to apply the constitutional provision to a condition to which it is not applicable would be not to interpret and enforce the Constitution, but to distort and destroy it.

Indeed, the truth of this view and the profound error involved in the contention relied upon is aptly shown by the further propositions advanced in argument and based upon the premise insisted upon. Thus, it is urged that if the limitation of the Amendment applies to Congress so as to prevent that body from creating a court and giving it power to act free from the restraints of the Amendment, it must also apply, unless the substance is to be disregarded and the shadow be made controlling, to the power of Congress to create a right and leave the power to enforce it in a forum to which the constitutional limitation is not applicable. But this again enlarges the Amendment by causing it not merely to put a limitation upon the power of Congress as to the courts, constitutional or otherwise, which it deems fit to create, but to engraft upon the power of Congress a limitation as to every right of every character and nature which it may create, or, what is equivalent thereto, to cast upon Congress the duty of subjecting every right created by it to a limitation that such right shall not be susceptible of being enforced in any court whatever, whether created by Congress or not, unless the court enforcing the right becomes bound by the restriction which the Amendment establishes. It is

true that the argument does not squarely face the contention to which it reduces itself since it is conceded that rights conferred by Congress, as in this case, may be enforced in state courts; but it is said this can only be provided such courts in enforcing the Federal right are to be treated as Federal courts and be subjected *pro hac vice* to the limitations of the Seventh Amendment. And of course if this principle were well founded, the converse would also be the case, and both Federal and state courts would by fluctuating hybridization be bereft of all real, independent existence. That is to say, whether they should be considered as state or as Federal courts would from day to day depend not upon the character and source of the authority with which they were endowed by the government creating them, but upon the mere subject-matter of the controversy which they were considering.

But here again the error of the proposition is completely demonstrated by previous adjudications. *Martin* v. *Hunter's Lessee,* 1 Wheat. 304, 330; *Houston* v. *Moore,* 5 Wheat. 1, 27–28; *Ex parte McNiel,* 13 Wall. 236, 243; *Claflin* v. *Houseman,* 93 U. S. 130; *Robertson* v. *Baldwin,* 165 U. S. 275; *Mondou* v. *New York, New Haven & Hartford R. R.,* 223 U. S. 1, 55–59. Moreover the proposition is in conflict with an essential principle upon which our dual constitutional system of government rests, that is, that lawful rights of the citizen, whether arising from a legitimate exercise of state or national power, unless excepted by express constitutional limitation or by valid legislation to that effect, are concurrently subject to be enforced in the courts of the State or nation when such rights come within the general scope of the jurisdiction conferred upon such courts by the authority, State or nation, creating them. This principle was made the basis of the first Federal Judiciary Act and has prevailed in theory and practice ever since as to rights of every character, whether derived from constitutional grant or legisla-

tive enactment, state or national.  In fact this theory
and practice is but an expression of the principles under-
lying the Constitution and which cause the governments
and courts of both the Nation and the several States not to
be strange or foreign to each other in the broad sense of
that word, but to be all courts of a common country, all
within the orbit of their lawful authority being charged
with the duty to safeguard and enforce the right of every
citizen without reference to the particular exercise of
governmental power from which the right may have
arisen, if only the authority to enforce such right comes
generally within the scope of the jurisdiction conferred
by the government creating them.  And it is a forgetful-
ness of this truth which doubtless led to the suggestion
made in the argument that the ruling in *Mondou* v. *New
York, New Haven & Hartford R. R.*, 223 U. S. 1, had over-
thrown the ancient and settled landmarks and had caused
state courts to become courts of the United States exer-
cising a jurisdiction conferred by Congress, whenever the
duty was cast upon them to enforce a Federal right.  It
is true in the *Mondou Case* it was held that where the
general jurisdiction conferred by the state law upon a
state court embraced otherwise causes of action created
by an act of Congress, it would be a violation of duty
under the Constitution for the court to refuse to enforce
the right arising from the law of the United States because
of conceptions of impolicy or want of wisdom on the part
of Congress in having called into play its lawful powers.
But that ruling in no sense implied that the duty which
was declared to exist on the part of the state court de-
pended upon the conception that for the purpose of en-
forcing the right the state court was to be treated as a
Federal court deriving its authority not from the State
creating it, but from the United States.  On the contrary
the principle upon which the *Mondou Case* rested, while
not questioning the diverse governmental sources from

which state and national courts drew their authority,
recognized the unity of the governments, national and
state, and the common fealty of all courts, both state and
national, to both state and national constitutions, and
the duty resting upon them, when it was within the scope
of their authority, to protect and enforce rights lawfully
created, without reference to the particular government
from whose exercise of lawful power the right arose.

*Affirmed.*