I.
Aubrey Wayne Bounds has brought an action which is not within the subject matter jurisdiction of the Chancery Court of Forrest County, Mississippi. This is so because he has failed to establish a jurisdictional *Page 924 
fact, i.e., the existence of an indebtedness owing by one or more of eight garnishee-defendants to the in personam defendant, Penrod Drilling Company. For this reason, I suggest with deference that my colleague, Justice Hawkins, errs when he concludes that "the Chancery Court was authorized to proceed with the trial of this case". (See majority opinion at page 12).
Bounds asserts his substantive claim for relief under the Jones Act, U.S.C. § 688. In so doing, he has brought an action at law. The substance of Bounds' claim is no doubt within Circuit Court subject matter jurisdiction in this state. If back on December 15, 1978, Bounds had filed his complaint[1] in the Circuit Court of Forrest County, Mississippi, he would have faced no jurisdictional dilemma.
Construing liberally as we ought the provisions of Section 147 of the Mississippi Constitution of 1890, the judgment of the Chancery Court is beyond our power to reverse. The only error in the proceedings below was the assumption of subject matter jurisdiction by the Chancery Court of an action clearly within the subject matter jurisdiction of the Circuit Court. I would affirm.
 II.
This case is appropriate for an exposition of the general theory of subject matter jurisdiction. I would begin by emphasizing that every court has jurisdiction to determine its own jurisdiction. Though in this case the Chancery Court did not have subject matter jurisdiction of this controversy, that court clearly had jurisdiction, i.e., the judicial power, to make a binding adjudication upon the issue of its own subject matter jurisdiction. More specifically, the Chancery Court of Forrest County had jurisdiction to determine authoritatively (subject only to review in this Court) the jurisdictional fact question here presented, i.e., was there an indebtedness owing to Penrod by one or more of the eight garnishee-defendants?
Having said that, I would emphasize that, generally speaking, the existence of subject matter jurisdiction — the power to hear this type of case at all — turns on the well pleaded allegations of the complaint which are taken as true. The defendant's denial of the facts alleged in the complaint is, again generally speaking, irrelevant to the existence of subject matter jurisdiction. This is as it should be.
First, this rule is consistent with the general policy of "first things first". It goes without saying that in every lawsuit subject matter jurisdiction needs to be determined, and determinable, at the outset. It should not be dependent upon future contingencies. Strict adherence to this notion saves time, money and energy that might otherwise be wasted in litigating a case ultimately dismissed on jurisdictional grounds.
Second, short of fraud or collusion on his part, the plaintiff is entitled to a measure of security when he files his suit. The well pleaded complaint rule immunizes the plaintiff from exposure to unreasonable hazards.[2] The defendant, too, may litigate vigorously, secure in the knowledge that his victory, if he obtains one, will not evaporate *Page 925 
on jurisdictional grounds. Here we in no way compromise the general principle that subject matter jurisdiction may be questioned at any time and may not be waived or conferred by consent. Having that jurisdiction determinable, generally irrevocably, on the day suit is filed on the basis of the good faith, well pleaded allegations of the complaint does no violence to that premise.
Third, the well pleaded complaint rule insures that conceptually the Court has the power to require a response by the defendant. Or, conversely, it assures that, if the defendant defaults, the Court has the power to enter a binding and enforceable judgment against him. Obviously, this is a power that the trial court, the court of original jurisdiction, must have in every case.
There is one major exception to this general premise. Where by statute subject matter jurisdiction is made to turn on the existence of certain facts, the plaintiff's failure to establish those facts is sufficient to deprive the court of jurisdiction. True, the court has jurisdiction by virtue of the allegations of the complaint to determine the jurisdictional fact. Yet, the possibility that the fact may not be found to exist does constitute a future contingency that may shortcircuit subject matter jurisdiction.
Chancery attachment pursuant to Sections 11-3-1 of the Mississippi Code of 1972, is one representative example of this jurisdictional facts exception to the general rule. Another is found in the familiar jurisdictional amount statutes. When it appears to a legal certainty that the plaintiff has no claim for an amount in excess of the statutory jurisdictional minimum, it may be said that he has failed to establish the existence of a jurisdictional fact, i.e., a controversy within the court's jurisdiction. See, e.g., Mobile, Jackson and Kansas CityRailroad Co. v. Hitt, 99 Miss. 679, 55 So. 484 (1911) (suit for $179.20 dismissed for want of circuit court subject matter jurisdiction where by statute the circuit court operated under a $200.00 minimum jurisdictional amount requirement).
In the district courts of the United States, diversity of citizenship jurisdiction offers another example of this jurisdictional facts exception to the well pleaded complaint rule. Despite the allegations of the complaint, if the plaintiff fails to establish as a matter of fact that the parties are of diverse citizenship, the complaint must be dismissed for lack of subject matter jurisdiction. Owen Equipment and Erection Co. v.Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (Iowa plaintiff sued defendant thought to have its principal place of business in Nebraska. Three days into the trial it was discovered that the defendant's place of business, though on the "Nebraska side" of the Missouri River, was actually in Iowa. The Court dismissed for lack of subject matter jurisdiction); Kelly v.United States Steel Corp., 284 F.2d 850 (3rd Cir. 1960). (Plaintiff, a citizen of Pennsylvania, alleged that U.S. Steel's principal place of business was New York. The Court found as a fact that it was in Pennsylvania and dismissed.)
Plaintiff Bounds has failed to establish a requisite jurisdictional fact, i.e., the existence of an indebtedness owing by one or more of the garnishee-defendants to Penrod. Because of this plaintiff has failed to bring his action within the subject matter jurisdiction of the Chancery Court. Minter v. Hart,208 So.2d 169, 170 (Miss. 1968). Here a vitally important distinction must not be ignored: For subject matter jurisdiction purposes, all that plaintiff needed to establish was the existence of an indebtedness owing by any one or more of the garnishee-defendants to Penrod. Whether or not that indebtedness, that res, was actually seized and subjected to the power of the court is irrelevant to the issue of subject matter jurisdiction. The seizure of the res, or lack of seizure, goes to the question of judicial jurisdiction,[3] not subject matter jurisdiction. The question of whether or not the res has been attached and subjected to the power of the Court has nothing to do with subject matter jurisdiction. That *Page 926 
question relates only to the existence of judicial jurisdiction.[4]
As I read it, the majority opinion blurs the distinction between subject matter and judicial jurisdiction. This has been done in our prior cases all too frequently. For example, seeCrescent Plywood Co. v. Lawrence, 305 So.2d 343, 346-347 (Miss. 1974), which in turn quotes from Griffith, Mississippi ChanceryPractice, § 484, at 489-90 (2d ed. 1950). The vital distinction between subject matter jurisdiction and judicial jurisdiction is there non-existent.[5]
The point is important because judicial jurisdiction may be waived, while subject matter jurisdiction may not. If the res,
i.e., the debt existed, Penrod would have been free to waive any objection it may have had to the fact that it had not been seized or attached. More precisely, if plaintiff had established as a fact that one or more of the garnishee-defendants really did owe money to Penrod at the time the suit was filed, the case would have been within the subject matter jurisdiction of the chancery court under Section 11-31-1. Whether that debt had in fact been seized would have been *Page 927 
irrelevant to the question of subject matter jurisdiction and, with Penrod having entered its appearance and waived any claim of lack of in personam jurisdiction, this Court would be required to affirm — without ever reaching the Section 147 question discussed below.
 III.
Another possible route to affirmance is suggested by the Chancery Court's opinion on the jurisdictional issue. We will pursue it briefly.
Here we speak of the familiar principle that, so long as the complaint alleges one matter within the subject matter jurisdiction of the Chancery Court, it has full power to hear and decide any and all non-chancery matters also alleged. Griffith,Mississippi Chancery Practice (2d ed. 1950) § 28. For example, if a complaint alleges one equity claim coupled with one or more legal claims, the Chancery Court has full power to decide all claims. In this circumstance it may be said that the legal claims lie within the pendent jurisdiction of the Chancery Court.
The proposition is carried a step further in such cases where, prior to trial, all chancery claims are dismissed — leaving a lawsuit consisting of claims ordinarily exclusively within the subject matter jurisdiction of the circuit court. In such cases, it is well established that the chancery court nevertheless has the power to hear and decide the remaining legal claims, notwithstanding the earlier evaporation of the equity claims. See e.g., Burnett v. Bass, 152 Miss. 517, 521, 120 So. 456 (1929);McClendon v. Mississippi State Highway Commission, 205 Miss. 71, 80, 38 So.2d 325 (1949); Duvall v. Duvall, 224 Miss. 546, 555, 80 So.2d 752 (1955); Shaw v. Owen Gin Co., 229 Miss. 126, 133, 90 So.2d 179 (1956); Morgan v. United States Fidelity Guaranty Co., 222 So.2d 820, 826 (Miss. 1969).
It is said that the power is not discretionary, that the chancery court must decide the remaining legal issues, though surely this is wrong. The chancery court originally has the power to hear the legal claims pursuant to the doctrine of pendent jurisdiction. To be sure it retains that power once the equity claims drop out of the case. But there must then be a second step wherein the chancellor is required in his sound discretion to determine whether or not he ought to exercise that power to hear and decide the legal issues. For example, where the equity claims drop out of the case early on in the proceedings and where the legal issues are such that the defendant is entitled to trial by jury (which he is demanding), and where the chancellor determines that it would work no undue hardship upon the litigants were they forced to repair to the circuit court, the chancellor would be well within his discretion to dismiss without prejudice the pending legal claims, or, on proper motion, to transfer them to the circuit court.[6] The only other exception to this pendent jurisdiction of the chancery court would be in cases where the chancery or equity claims were asserted originally under circumstances suggesting bad faith or fraud.
In the context of the premises stated above, it is tempting to say that Aubrey Wayne Bounds properly invoked the jurisdiction of the chancery court, that, once the chancery attachment claims dropped out of the lawsuit, the court nevertheless had the power in its sound discretion to continue with the legal claims and that the chancellor having done so and having rendered judgment for plaintiff, we should affirm. Such would be an application of the well pleaded complaint rule wherein we would blindly have to accept as true, for subject matter jurisdictional purposes, the allegations of the existence of an indebtedness *Page 928 
owing by one or more of the garnishee-defendants to Penrod. The jurisdictional facts exception stated above is to be sure an abberation disrupting the logical symmetry of the well pleaded complaint rule. It is, nevertheless, an abberation up with which we must be prepared to put.[7] For otherwise jurisdictional fact requirements in subject matter jurisdiction statutes would be rendered meaningless, thereby defeating clearly manifested legislative intent, and fraudulent invocation of subject matter jurisdiction would be impossible to police.
We thus return to the point made in Part II of this opinion. We regard as controlling that plaintiff failed to establish an essential jurisdictional fact. Plaintiff did not establish that any of the garnishee-defendants owed Penrod so much as one penny. This failure means that the Chancery Court of Forrest County, in the exercise of its jurisdiction to determine its own subject matter jurisdiction, should have held that it lacked subject matter jurisdiction and sent plaintiff packing.[8]
Accordingly, I would hold that the Chancery Court of Forrest County, Mississippi, lacked subject matter jurisdiction of this action.
 IV.
An action under the Jones Act, 46 U.S.C. § 688, is essentially an action at law.[9] The Jones Act is a statutory remedy for seamen injured by the negligence of their employers.[10] Trial by jury is provided by statute and has always been considered a major part of the seaman's remedy.[11] Fitzgerald v. UnitedStates Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963); see also Sentilles v. Inter-Caribbean Shipping Corp.,361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959), and IllinoisCentral Railroad Company v. Coussens, 223 Miss. 103, 117,77 So.2d 818, 823 (1955).
Jones Act suits, like so many other federal statutory actions, are subject to a regime *Page 929 
of concurrent jurisdiction. They may be brought in the state or federal court of otherwise competent jurisdiction, at the plaintiff's election. 46 U.S.C. § 688; 45 U.S.C. § 56. That such actions at law may be heard and adjudicated on their merits in the circuit courts of this state has been established beyond per adventure. Larry v. Moody, 242 Miss. 267, 274, 134 So.2d 462, 464 (1961); Security Barge Line, Inc. v. Killebrew,278 So.2d 460 (Miss. 1973); Standard Products, Inc. v. Patterson,317 So.2d 376, 378 (Miss. 1975).
I am in sympathy with much of what Justice Broom has written in his dissenting opinion. Still I suspect with deference that he errs when he labels this action as "an in rem statutory procedure of attachment", now and forever. This is, and always has been, a single civil action. Its subject matter is a claim by plaintiff Bounds that he was the member of the crew of a vessel, that he was injured by the negligence of his employer, that the Jones Act afforded him the right of recovery for that negligence, that he was entitled to an award of monetary damages inpersonam against his employer, and that, in addition, he was entitled to the attachment remedy provided in Section 11-31-1, et seq. The only theory of liability he states is one "at law". The primary relief he seeks is damages, traditional legal relief. Only his auxiliary prayer for relief, chancery attachment, would not be entertained by the Circuit Court.
In my view, there is no question but that the complaint as filed stated a claim which, as of December 15, 1978, lay within the subject matter jurisdiction of the Circuit Court of Forrest County, Mississippi. No doubt, in personam jurisdiction was defective (though waivable). Even if the res had existed, plaintiff could not have subjected it to the jurisdiction of the Circuit Court for there is no statutory procedure in this state which covers such cases. But the fact that judicial jurisdiction may have been one hundred percent lacking in the Circuit Court in no way changes the fact that this action, applying the well pleaded complaint rule discussed above, lay within the subject matter jurisdiction of the Circuit Court.
If Bounds had filed with the Circuit Court the identicalpieces of paper in fact filed with the Chancery Court on December15, 1978, the action would have been within the subject matterjurisdiction of the Circuit Court. And if Penrod had consented to in personam jurisdiction and enter its appearance, the case could have proceeded to trial and judgment without doubt. Had such occurred, the allegations of the indebtedness owing to Penrod and the prayer for attachment of the res would properly have been viewed as so much useless verbiage in plaintiff's pleadings, because harmless, to be disregarded.[12]
It has been suggested that in the instant case, the pleadings and proof would not have made a prima facie case in either chancery or circuit court. This is simply not so. The pleadingsand proof do make out a prima facie case in circuit court. We suggest that a careful analysis of the pleadings and proof establish, inter alia, that at the time and on the occasion in question Bounds was a member of the crew of a vessel owned or operated by Penrod [Producers Drilling Co. v. Gray,361 F.2d 432 (5th Cir. 1966)], that at the time and on the occasion in question Penrod or one of its agents was guilty of negligence which caused in whole or in part injuries sustained by Bounds. Under these circumstances, Bounds has alleged and proved all elements of the claim for relief under the Jones Act. Withoutregard to what else may have been *Page 930 alleged but not proved, these allegations were sufficient tobring this action within the subject matter jurisdiction of theCircuit Court.
 V.
There is yet another analysis upon which we conclude that this action was within circuit court subject matter jurisdiction. As explained above, this action is not within the limited subject matter jurisdiction of the chancery court. If that be so, it must per force be within the subject matter jurisdiction of the circuit court, a court of general jurisdiction.
Note Section 156 of the Mississippi Constitution of 1890 which provides
 The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court.
The general jurisdictional powers created in the Constitution have been expressly vested in the circuit courts by legislative enactment. Section 9-7-81 of the Mississippi Code of 1972 provides that the circuit courts
 Shall have original jurisdiction . . . of all other actions and causes, matters and things arising under the Constitution and laws of this state[13] which are not exclusively cognizable in some other court. . . .
It is indisputable that original subject matter jurisdiction of this action must lie somewhere.[14] That somewhere is not the chancery court. It must, therefore, come within the catch-all original subject matter jurisdiction of the circuit court which, we emphasize, is a court of general jurisdiction. In this view, I would have the Court expressly hold that, pursuant to Section 156 of the Mississippi Constitution of 1890 and Section 9-7-81 of the Mississippi Code of 1972, original subject matter jurisdiction of this action properly lay in the Circuit Court of Forrest County, Mississippi.
 VI.
We now come to the question of what disposition should be made of this matter in view of what we have said above. We consider this question in the light of Section 147 of the Mississippi Constitution of 1890, which precludes reversal where there has been a mistake of subject matter jurisdiction between matters of law and equity.
We must remember that it is a constitution we are expounding.[15] A constitution is a document presumably capable of ordering the affairs of men in decades beyond the time of ratification. Constitutional provisions must be capable of providing a framework for the administration of justice under circumstances beyond the prescience of their draftsmen.
This maxim of constitutional construction has been long recognized by this Court. See Moore v. General Motors AcceptanceCorp., 155 Miss. 818, 125 So. 411 (1930). There Judge Griffith charged those construing the provisions of the Mississippi Constitution of 1890
 To ascertain and give effect to the intent of those who adopted it, to constantly keep in mind the object desired to be accomplished and the evils sought to be prevented or remedied. 155 Miss. at 822, 125 So. 411.
In the Moore case, Judge Griffith then provides us with a classic statement of the *Page 931 
underlying principles of constitutional interpretation
 So it is that words, separately considered and in the strictly technical sense in which used in a Constitution, and as defined at the day of their original use therein, do not of themselves immovably fetter the sense or intention, for, if that were held to be the case, the Constitution intended to stand for all time, or at least for a long time, would by such restriction make of itself only a temporary document; it would so enchain itself as to be incapable, in a healthful and uniform manner, of any expansion or development or movement with the living current of the times, and would thereby hold within its embrace the certain means of its own ultimate destruction. 155 Miss. at 823-824, 125 So. at 416.
In Moore Judge Griffith was construing Section 147. He recognized that its underlying purpose was to avoid the possibility that a judgment or a decree would be reversed solely because the case had been brought in the wrong court. Indeed he noted that at the Constitutional Convention there was "strong minority sentiment" for combining the circuit and chancery courts into a single court and that
 The most potent argument in favor of that proposal was the evil that often, after arduous and expensive litigation, a judgment or decree correct on the merits would be reversed solely on the point that the case had been instituted in the wrong court. 155 Miss. at 821, 125 So. 411.
Instead of combining the two courts, however, the Convention nevertheless sought to avoid the feared injustices
. . . . To cure the evil which was the chief basis of that argument, section 147 was devised and inserted in the Constitution.[16] 155 Miss. at 821, 125 So. 411.
In Moore the Court applied Section 147 to affirm a judgment in a factual setting hardly within the literal language of the constitutional provision — though easily within the scope of its spirit and the general evil with which the Convention was concerned.[17] Beyond Moore, this Court has been consistent in its adherence to the general principles of constitutional construction enumerated by Judge Griffith. Where the competing jurisdictions were the chancery court and the circuit court, as distinguished from a far more narrow "competition" between actions at law or suits in equity, we know of no recent case where this Court dismissed on appeal for want of such matter jurisdiction — Section 147 always standing as a bar. There can be no doubt that the proper construction of Section 147 in our Constitution must avoid the sort of harsh result the majority would decree here.
In two recent cases, McLean v. Green, 352 So.2d 1312 (Miss. 1977) and Louisville and Nashville Railroad Co. v. Hasty,360 So.2d 925 (Miss. 1978), the Court construed Section 147 as we think it ought to be construed. In each of those cases a minor plaintiff brought a personal injury action in the chancery court claiming that the subject matter of the case involved "minor's business" and was thus within chancery court subject matter jurisdiction by virtue of Section 159 of the Mississippi Constitution of *Page 932 
1890. In each of those cases the minor plaintiff's tort claim was clearly within the subject matter jurisdiction of the circuit court. In each this Court held that the claim did not involve "minor's business" within the meaning of the constitutional section and, accordingly, that the chancery court did not have subject matter jurisdiction of the action. Still this Court affirmed stating
 Although we hold that the chancellor was in error [in assuming subject matter jurisdiction] Mississippi Constitution, § 147 (1890) prevents reversal solely on the ground of want of jurisdiction. . . . 352 So.2d at 1314, 360 So.2d at 927.
If one were to construe Section 147 strictly, the phrase "equity . . . jurisdiction" found there might be held to relate only to Section 159(a) of our Constitution which creates the judicial power of chancery courts over "all matters in equity". Such a construction, if adopted, would necessarily exclude from the coverage of Section 147 all other cases potentially within the subject matter jurisdiction of the chancery courts, those types of cases enumerated in Section 159(b)-(f), to-wit: cases the subject matter of which may be
(b) divorce and alimony;
(c) matters testamentary and of administration;
(d) minor's business;
(e) idiocy, lunacy, and persons of unsound mind; and
(f) cases of which the chancery courts had subject matter jurisdiction under the law in force when the Constitution of 1890 was put in operation.
McLean and L N Railroad make it clear that the narrow, strict construction of Section 147 is not favored in this Court. Rather, those decisions necessarily proceed on the theory that Section 147 applies to all mistaken assumptions of subject matter jurisdiction by a chancery court, not just those where the chancery court erroneously held the case to fall within Section 159(a). In McLean and L N Railroad chancery court subject matter jurisdiction was claimed ultimately on the authority of Section 159(d), minor's business. On appeal this Court held that the chancery court had mistakenly assumed jurisdiction but the Section 147 precluded reversal. We emphasize that in neither of those cases had the chancery court assumed jurisdiction because of a mistaken notion that the suit was one in equity under Constitution Section 159(a) and Code Section 9-5-81.
We are here confronted with an action brought in chancery court by Aubrey Wayne Bounds invoking subject matter jurisdiction under Section 11-31-1, the familiar chancery attachment statute. The legislature has the constitutional power to vest in the chancery courts subject matter jurisdiction of attachment suits. That power is found in Section 159(f) of the Mississippi Constitution of 1890. Such attachment suits were within the subject matter jurisdiction of the chancery courts at the time the Constitution became effective. Dinwiddie v. Glass, 111 Miss. 449, 71 So. 745 (1916). If, as McLean and L N Railroad hold, mistaken assumptions of subject matter jurisdiction under Section 159(d) are covered by the no reversal provisions of Section 147, it follows that such mistakes in Section 159(f) cases are likewise covered. Such is the effect of the cryptic holding at the beginning of Judge Gillespie's opinion in Minter v. Hart,208 So.2d 169, 170 (Miss. 1968).
Minter is the icing on the cake. There plaintiff brought his action in chancery court. He alleged subject matter jurisdiction under the chancery attachment statute. A Section 159(f) case! The chancery court assumed jurisdiction and tried the case on its merits even though there was "no . . . proof to sustain an attachment in chancery." 208 So.2d at 170. This Court held that the chancery court should have dismissed for want of subject matter jurisdiction. Reversal, however, was held precluded under Section 147.
In summary, at this late date there can be no doubt that, at the very least, Section 147 should be understood to read *Page 933 
 No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of . . . [chancery court] or . . . [circuit court] jurisdiction; . . .
If the Constitution be so read, the judgment below must be allowed to stand notwithstanding the chancery court's erroneous assumption of subject matter jurisdiction.
 VII.
The Chancery Court of Forrest County, Mississippi, was without subject matter jurisdiction of this action. On the other hand, the action was and is within the subject matter jurisdiction of the Circuit Court. No other errors appearing in the record,[18]
I would hold that Section 147 of the Mississippi Constitution of 1890 precludes reversal here. For these reasons I concur in the judgment of affirmance announced today by Justice Hawkins speaking for the majority.
PRATHER, J., joins in this opinion.
[1] For convenience we will here employ the nomenclature now in effect. Mr. Bounds is the "plaintiff" instead of "complainant". His pleading is the "complaint" instead of the "Bill of Complaint". And so forth.
[2] The Jones Act has a three year statute of limitations. See 46 U.S.C. § 688, 45 U.S.C. § 56, and McAllister v. MagnoliaPetroleum Company, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958). Bounds' claim accrued on March 18, 1976. He brought his action in Chancery Court on December 15, 1978, well within the applicable limitations period. If the judgment below had been reversed, we would assume that Bounds would have had yet another year within which to bring a new action in Circuit Court, or, if he had wished, a Court of the United States of otherwise competent jurisdiction. See Section 15-1-69, Miss. Code Ann. (1972); Ryan v. Wardlaw, 382 So.2d 1078 (Miss. 1980). Though his action would not have been lost forever, Bounds would have had to go through the agonies of another trial. See Magee v.Griffin, 345 So.2d 1027, 1032, (Miss. 1977). His witnesses may have died, disappeared or suffered lapses of memory. He would have had to begin anew a journey he had every reason to think he had completed.
[3] The term "judicial jurisdiction" is an umbrella term that includes the familiar in personam jurisdiction, in rem
jurisdiction, and quasi in rem jurisdiction.
[4] Justice Holmes recognized the point in a similar context inUnited States v. Freights of the Mount Shasta, 274 U.S. 466, 47 S.Ct. 666, 71 L.Ed. 1156 (1927) when he wrote
 It is said that the Court derives its jurisdiction from its power, and no doubt its jurisdiction ultimately depends on that. But the jurisdiction begins before actual seizure, and authorizes a warrant of arrest, which may or may not be successful. 274 U.S. at 471, 47 S.Ct. at 667, 71 L.Ed. at 1157. [Emphasis added]
The jurisdiction which begins before actual seizure, of course, includes both subject matter jurisdiction and jurisdiction to determine jurisdiction.
[5] An example drawn from this case may serve to underscore the distinction which must sharply be drawn between subject matter jurisdiction and judicial jurisdiction. Insofar as the complaint charges that one or more of the eight garnishee-defendants hold ares, i.e., an indebtedness, owned by the in personam
defendant, Penrod, and that seizure of this res may establish judicial jurisdiction in Forrest County, Mississippi, it borders upon the frivolous. In light of Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), we detect no way Mississippi could have subjected Penrod to an adjudication of its rights in these alleged indebtednesses (a) consistent with constitutional restrictions upon the power of this State as a consequence of its territorial limitations or (b) by virtue of rights secured to Penrod by the due process clause of the Fourteenth Amendment to the Constitution of the United States. There was a potent argument that could have been advanced by Penrod against judicial jurisdiction. Still there is no reason in law or policy why Bounds should be discouraged from making this frivolous allegation of judicial jurisdiction, hoping for a waiver by Penrod.
On the face of things, plaintiff had a far more legitimate basis for alleging (and thinking he could establish) subject matter jurisdiction than judicial jurisdiction. All that plaintiff needed to establish in order to bring the case within the subject matter jurisdiction of the Chancery Court was the existence of an indebtedness owed by one or more of the eight garnishee-defendants to Penrod. True, plaintiff had to prove the fact of such an indebtedness. Practically speaking, it was not unreasonable to assume that one or more of these eight oil companies named as garnishee-defendants did business with and thus owed an indebtedness to Penrod. Conversely, it seems a reasonable guess that Penrod performed drilling services for one or more of these companies as a result of which the requisite indebtedness might have arisen. Under the well pleaded complaint rule described above, plaintiff was perfectly free to make such a "reasonable guess". And if, as a matter of fact, he had established the existence of any such indebtedness, he would have been home free on the subject matter jurisdiction issue.
The fact that plaintiff had (short of the waiver that was in fact entered) no hope of subjecting Penrod to in personam
jurisdiction in this Court, or Penrod's accounts receivable toquasi in rem jurisdiction, does not mean that plaintiff's claim of subject matter jurisdiction runs afoul of the fraud or collusion exception mentioned above. Plaintiff's good faith guess that one or more of these oil companies did owe Penrod money is an aspect of the complaint subject to the well pleaded complaint rule for purposes of subject matter jurisdiction. If plaintiff had only proved the fact of just one such indebtedness, the chancery court would have had subject matter jurisdiction, without regard to whether the res or indebtedness were ever formally attached.
In short, and perhaps ironically the jurisdictional matter with respect to which Bounds' jurisdictional allegations appear frivolous and maybe even made in bad faith was subject to cure by Penrod's waiver. On the other hand, the good faith and certainly not unreasonable allegation of jurisdictional facts necessarily requisite for subject matter jurisdiction may not be confessed or waived.
[6] We are not unaware of Moore v. Mississippi Hospital andMedical Service, 317 So.2d 919 (Miss. 1975). If, as here, defendant moves to dismiss, not to transfer, and if, as here, the motion ought to be granted, plaintiff has the right to "accept" dismissal. Forcing upon litigants affirmative relief, e.g., transfer to circuit court, which no one has sought, is a dubious practice. Surely this Court would not deny such a "dismissed" plaintiff the prerogative of accepting dismissal in lieu of transfer.
[7] With apologies to the late Sir Winston Churchill, the structure of the above sentence seems somehow appropriate.
[8] Penrod filed a motion to dismiss for lack of subject matter jurisdiction on April 21, 1980. That motion should have been granted.
[9] When the Jones Act seaman brings his action in United States District Court, he has the option to designate his action as one "at law" by invoking any one or more of three separate federal jurisdictional bases: federal question jurisdiction (28 U.S.C. § 1331), diversity of citizenship (28 U.S.C. § 1332), or regulation of commerce (28 U.S.C. § 1337). If he does this, and makes timely demand, he gets a jury trial. On the other hand, if the plaintiff wishes to foreclose the possibility of his action being heard by a jury, he may style his action as one "in admiralty", asserting jurisdiction under 28 U.S.C. § 1333 and invoking Rule 9(h), F.R. Civ.P. State courts, of course, have no admiralty jurisdiction. 28 U.S.C. § 1333. When brought in a state court a Jones Act action is necessarily an action at law.
[10] The Jones Act, 46 U.S.C. § 688, incorporates by reference the Federal Employers' Liability Act [FELA], 45 U.S.C. § 51, et seq. By the enactment of the Jones Act, the Congress made available to seamen remedies against their employers identical to the remedies FELA had granted railroad workers. Mitchell v.Trawler Racer, Inc., 362 U.S. 539, 546-547, 80 S.Ct. 926, 930-31, 4 L.Ed.2d 941, 946 (1960). Jones Act and FELA cases are routinely cited interchangeably. Greenhaw v. Pacific-AtlanticS.S. Corp., 190 Or. 182, 224 P.2d 918 (1950); Hopson v. GulfOil Corp., 150 Tex. 1, 237 S.W.2d 352 (1951).
[11] Ordinarily it might be said with confidence that a chancellor has no more business hearing and entertaining an adjudication of a Jones Act case than he would any other variety of personal injury damage suit. And where there is an objection to the chancellor proceeding in such matters, even where the proceeding is labeled a chancery attachment and where there is no question regarding the validity of the attachment, it would seem that on proper motion the matter should be transferred to the Circuit Court. See Robertson v. Evans, 400 So.2d 1214 (Miss. 1981). After all, the trial by jury provision is a part of the Jones Act itself and ought to be binding on whatever court the State of Mississippi furnishes to hear the case. IllinoisCentral Railroad Co. v. Coussens, 223 Miss. 103, 113, 117,77 So.2d 818, 821, 823 (1955). To the extent that the constitutional parameters of the right to trial by jury may be implicated in a Jones Act case heard in a court of this state, we look to Section 31 of the Mississippi Constitution of 1890, not the Seventh Amendment. See Minneapolis and St. Louis Railroad Co. v.Bombolis, 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961, 965 (1916).
[12] The fact that a plaintiff prays for a remedy beyond the power of the court to grant has never been thought to deprive the court of subject matter jurisdiction of so much of the claim and prayer as may be within the court's power. Until Tideway OilPrograms v. Serio, 431 So.2d 454 (Miss. 1983), the chancery courts of this state had no power to award punitive damages. SeeMonsanto Company v. Cochran, 254 Miss. 399, 404-405,180 So.2d 624, 626 (1965). Yet, if a complaint stated a claim otherwise within chancery court subject matter jurisdiction, that jurisdiction was not ousted by the fact that the over zealous plaintiff also prayed for punitive damages. Compare M.T. ReedConstruction Company v. Nicholas Acoustics and SpecialtyCompany, 387 So.2d 98 (Miss. 1980).
[13] For purposes of Section 9-7-81, the Jones Act is as much a part of the "laws of this state" as if it had been enacted by the Mississippi Legislature and codified in the Mississippi Code of 1972. Such is the effect of the decisions of the Supreme Court of the United States, grounded ultimately upon the authority of the Supremacy Clause, in Mondou v. New York, New Haven and HartfordRailroad Co., 223 U.S. 1, 55-59, 32 S.Ct. 169, 177-79, 56 L.Ed. 327, 348-350 (1912); Minneapolis St. Louis Railroad Company v.Bombolis, 241 U.S. 211, 222-223, 36 S.Ct. 595, 598-99, 60 L.Ed. 961, 965 (1916).
[14] The State must furnish to the F.E.L.A. and Jones Act plaintiff some forum in which to assert his claim. As indicated above, in this state these cases have traditionally been heard in the Circuit Courts.
[15] Here we plagiarize from Chief Justice Marshall inMcCulloch v. Maryland, 17 U.S. 316, 407, 4 Wheat. 316, 407, 4 L.Ed. 579, 601 (1819).
[16] Although the Convention stopped short, adopting only Section 147, we have in recent years continued to ease toward "merger". In McClendon v. Mississippi State Highway Commission,205 Miss. 71, 38 So.2d 325 (1949) this Court held that a chancery court could adjudicate a "mixed" controversy, even though the equity issues had been dismissed and only legal matters remained at the time of trial. Although the practice is not encouraged, trial of pure actions at law disguised as chancery attachments has been allowed in the chancery courts and such could have occurred here if only plaintiff Bounds had proved the requisite jurisdictional facts; but see Robertson v. Evans,400 So.2d 1214 (Miss. 1981). Conversely, if equitable issues are asserted in an action in circuit court and if they are properly adjudicated, this Court will not reverse. Dilworth v. FederalReserve Bank of St. Louis, 170 Miss. 373, 150 So. 821 (1933).
[17] Moore concerned a case heard erroneously on the equity side of the county court, when it should have been heard on the law side. The Court went outside the literal language of Section 147 and decided Moore on the basis of the principle implied therein.
[18] In support of its argument against subject matter jurisdiction, Penrod says much about the alleged unconstitutionality of our chancery attachment statutes. SeeMississippi Chemical Corp. v. Chemical Construction Corp.,444 F. Supp. 925 (S.D.Miss. 1977), and MPI, Inc. v. McCullough,463 F. Supp. 887 (N.D.Miss. 1978). The argument proceeds seemingly unaware (a) that this question conceptually may not be reached until subject matter jurisdiction is established, (b) that this question is in no way implicated or intertwined in the subject matter jurisdiction controversy so central to this case, and (c) in any event, that since nothing was seized no property could possibly have been taken without due process of law.
Penrod admits no property was seized. Instead, it relies upon the supposed threat of seizure. Penrod claims that it made its entry of appearance here to avoid embarrassment in its business relationships with the eight garnishee-defendants. The argument is not persuasive. Beyond that, it misses the point. That the chancery attachment statutes may allow seizures of property (or threats of seizures) sans due process in no way infects the power of so much of Section 11-31-1 as confers subject matter jurisdiction upon the chancery courts. As explained above, Penrod should prevail (albeit temporarily, in our view) on the subject matter jurisdiction issue, not because its property was seized (or threatened with seizure) without due process, but because Bounds has failed to prove a requisite jurisdictional fact, i.e., the existence of an indebtedness owed Penrod by one or more of the eight garnishee-defendants. The unconstitutionality argument is thus irrelevant to the subject matter jurisdiction issue. More properly it relates to our Section 147 inquiry, for if accepted Penrod's thesis here would be an "error in the proceedings other than as to jurisdiction". As such, Section 147's bar against reversal would be lifted. As indicated, however, we would reject the unconstitutionality argument on its merits and on the authority of Section 147 affirm.