# SUPREME COURT OF THE UNITED STATES

## CORRINE MORGAN THOMAS, ET AL. *v.* HUMBOLDT COUNTY, CALIFORNIA, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 24–1180.   Decided October 14, 2025

The petition for a writ of certiorari is denied.

Statement of JUSTICE GORSUCH respecting the denial of certiorari.

In *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U. S. 211, 217 (1916), this Court held that the Seventh Amendment's civil jury trial right is not enforceable against the States. Petitioners ask us to reconsider that decision. But a number of "vehicle" problems make it unlikely that we could do so in this case. See Brief in Opposition 21–44. Accordingly, I agree with the Court's decision to deny review. At the same time, I do not doubt that *Bombolis* warrants a second look.

As petitioners observe, *Bombolis* is something of a relic. There, the Court dismissed as "strange" the notion that the Seventh Amendment—or, for that matter, *any* of the Bill of Rights—might be enforceable against the States. 241 U. S., at 217–218. But what once might have seemed strange almost goes without saying today. In the years since *Bombolis*, this Court has "shed any reluctance" about the idea that the Fourteenth Amendment "incorporate[s]" against the States many of the liberties enshrined in the Bill of Rights. *McDonald* v. *Chicago*, 561 U. S. 742, 764 (2010).

To be sure, debates exist around the edges. There are, for example, those who hold that the Fourteenth Amendment incorporates provisions of the Bill of Rights through its Due Process Clause, while others believe that the Privileges or Immunities Clause supplies the truer source of authority

for the job. See generally *Timbs* v. *Indiana*, 586 U. S. 146, 157 (2019) (GORSUCH, J., concurring). Similarly, some have argued that the Fourteenth Amendment selectively incorporates only fundamental or deeply rooted aspects of the Bill of Rights, while others have suggested that, under that test or any other, the Fourteenth Amendment renders all of the first eight Amendments enforceable against the States. Compare *Wolf* v. *Colorado*, 338 U. S. 25, 27 (1949) (overruled by *Mapp* v. *Ohio*, 367 U. S. 643 (1961)), with *Adamson* v. *California*, 332 U. S. 46, 74–75 (1947) (Black, J., dissenting).

But whatever one's position on matters like those, it is hard to imagine how the Seventh Amendment might not be among those rights the Fourteenth Amendment secures against the States. Under this Court's contemporary case law, States must respect the First Amendment's Establishment Clause, the Second Amendment's right to bear arms, the Fifth Amendment's protections against self-incrimination and its Takings Clause, the Eighth Amendment's Excessive Fines Clause; the list goes on. See, *e.g.*, *McDonald*, 561 U. S., at 764, n. 12; *Timbs*, 586 U. S., at 150 (majority opinion). On what account should the Seventh Amendment be treated differently?

Surely, those who founded our Nation considered the right to trial by jury a fundamental part of their birthright. See *SEC* v. *Jarkesy*, 603 U. S. 109, 121 (2024). So much so that they cited its deprivation at the hands of colonial authorities as one of the reasons for breaking ties with England. *Ibid.* After the Revolution, too, the new States promptly "restored the institution . . . to its prior prominence." *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322, 340–341 (1979) (Rehnquist, J., dissenting). "Indeed, [t]he right to trial by jury was probably the only one universally secured by the first American state constitutions." *Id.*, at 341 (internal quotation marks omitted). If the Federalists and Anti-Federalists disagreed about anything when it came to

the civil jury trial right, it may have only been about whether the right was "*the* most important of all individual rights, or simply one of the most important rights." K. Klein, The Myth of How to Interpret the Seventh Amendment Right to a Civil Jury Trial, 53 Ohio St. L. J. 1005, 1010 (1992) (emphasis in original).

Nor had much changed by the time of the Fourteenth Amendment's adoption. The right to a civil jury trial remained so deeply rooted that perhaps 97% of Americans at the time lived in States that guaranteed the right. See S. Calabresi & S. Agudo, Individual Rights Under State Constitutions When the Fourteenth Amendment Was Ratified in 1868, 87 Texas L. Rev. 7, 116 (2008). In fact, the civil jury trial right may have enjoyed even more robust protection in American States than various other rights this Court has deemed fit for incorporation. See *Timbs*, 586 U. S., at 152 (35 out of 37 States expressly forbade excessive fines at the time of the Fourteenth Amendment's adoption); *McDonald*, 561 U. S., at 777 (22 of the 37 States "explicitly protected the right to keep and bear arms" in 1868).

That *Bombolis* lingers on the books not only leaves our law misshapen, it subjects ordinary Americans to a two-tiered system of justice. Take just one example. When a federal agency accuses someone of fraud and seeks civil penalties, the Seventh Amendment guarantees that individual the right to have the case heard by a jury of his peers—not by other agency officials who work side by side with those bringing the charges. See *Jarkesy*, 603 U. S., at 120–121. But, thanks to *Bombolis*, state and local agencies pursuing similar charges and similar relief sometimes claim that they are free to dispense with the hassle of proving their case to a jury. For those in the government's crosshairs, that difference is no costless affair. No less than at the founding, civil juries today play a critical role in checking governmental overreach, holding public officials ac-

countable, and ensuring a fair hearing for those who come before our courts.

*Bombolis* may survive today, but this Court should confront its Seventh Amendment holding soon. A right "'of such importance,'" one that "'occupies so firm a place in our history,'" deserves no less. *Jarkesy*, 603 U. S., at 121 (quoting *Dimick* v. *Schiedt*, 293 U. S. 474, 486 (1935)).